IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HORTON HOMES, INC., ) | |
| ) | |
|     PLAINTIFF, ) | |
| ) | |
| v. ) | CASE NO.: 2:07-cv-506-MEF |
| ) | |
| LARUE BANDY, et al., ) | (WO- Publish) |
| ) | |
|     DEFENDANTS. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This cause is before the Court on the Motion for Preliminary Injunction (Doc. # 15) filed on July 13, 2007 by Plaintiff Horton Homes, Inc. ("Horton Homes"). The Court has carefully considered all submissions and argument in support of and in opposition to the motion and has convened a hearing on the matter. For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be DENIED to the extent that it seeks a preliminary injunction as to the Horton Homes' claims against William Shaner ("Shaner"). The Court notes that nothing in this Memorandum Opinion and Order is intended to have any effect on the Consent Preliminary Injunction (Doc. # 43) entered at the request of the parties with respect to the claims of Horton Homes against Larue Bandy, Marie Bandy, Patrick Pritchett, Elsie Fondren Averette, William Cruthirds, and Sherrie Cruthirds.[1]

---

[1] With respect to all defendants other than Shaner, the parties reached an agreement that the entry of preliminary injunction was appropriate. The parties filed a joint motion to that effect and asked the Court to enter a preliminary injunction which address only the claims of Horton Homes against all defendants other than Shaner. This Court granted that request. For this reason, the only issue before the Court is whether it is appropriate to grant Horton Homes' request for a preliminary injunction which relates only to Shaner. For this

**JURISDICTION AND VENUE**

Upon an independent review of the allegations of the Complaint, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3).[2] Horton Homes has alleged a factual basis establishing this Court as an appropriate venue for this action, and Defendants have failed to dispute that allegation in their answers or otherwise.

**FACTUAL AND PROCEDURAL BACKGROUND**

Horton Homes is a Georgia corporation that produces manufactured and modular homes, which it sells to a variety of retailers for resale to consumers. Shaner purchased a home manufactured by Horton Homes from a retailer known as H&S Homes, LLC ("H&S Homes"). In order to consummate this purchase Shaner and H&S Homes executed a Retail Installment Contract which contained a provision requiring arbitration of any claims arising out of or relating to that contract. Horton Homes was not a party to the arbitration agreement between Shaner and H&S Homes.

In August of 2006, Shaner commenced an arbitration proceeding against both Horton

---

reason, this Memorandum Opinion and Order will address only Horton Homes' claims against Shaner.

[2] In both the Answer (Doc. # 9) and the Amended Answer (Doc. # 21), Defendants admitted the allegations establishing subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Nevertheless, Defendants argued that this Court lacked subject matter jurisdiction to hear this case in their brief in opposition to Plaintiff's motion for preliminary injunction. *See* Doc. # 22. When pressed on this issue at the September 24, 2007 hearing, Defendants again conceded that this Court has subject matter jurisdiction over this case. The Court relies not on these concessions, but on its own analysis of whether the allegations of the Complaint create a controversy over which this Court has subject matter jurisdiction. The Court finds that it does because Horton Homes is a Georgia resident and all defendants are residents of states other than Georgia and because the amount in controversy is satisfied.

Homes and H&S Homes. In this arbitration proceeding, Shaner alleged fraud, deceit, conversion, forgery, negligence, and wantonness. Horton Homes filed a motion asking the arbitrator to dismiss it from the arbitration proceeding because it was not a party to any arbitration agreement and objected to being required to participate in the arbitration proceeding. The arbitrator went forward with the hearing on June 5, 2007. Additionally, he deferred ruling on Horton Homes' motion and objection. On July 6, 2007, the arbitrator entered a damage award against Horton Homes and H&S Homes in the amount of $487,500 and denied Horton Homes' motion to dismiss. The arbitrator also taxed the costs of the arbitration, including the filing fee and the arbitrator's fee against Horton Homes and H&S Homes. Horton Homes took an appeal of this award to the Alabama Supreme Court, where the appeal is still pending.

A few days after the hearing before the arbitrator was completed, Horton Homes filed suit in this Court seeking a judgment declaring that Shaner cannot pursue any arbitration against Horton Homes and that any award from any arbitration is of no effect because Horton Homes was not a proper party to the arbitration. Horton Homes also sought the costs of the action including attorney's fees.

On July 15, 2007, Horton Homes filed its Motion for Preliminary Injunction (Doc. # 15). By this motion, Horton Homes sought to enjoin Shaner from any further pursuit of arbitration proceedings against Horton Homes until this Court rules on the issues of arbitrability and the request for declaratory relief requested in this lawsuit. Shaner opposed this motion. The Court conducted a hearing over the course of two days.

**DISCUSSION**

A preliminary injunction is "an extraordinary and drastic remedy" that cannot be granted unless the moving party clearly establishes the following four prerequisites:

> (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

*Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (*en banc*). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

In order to succeed on the merits in this case and obtain the declaratory relief it seeks, Horton Homes must establish that it is not bound to any arbitration agreement with Shaner. It is undisputed that Horton Homes is not a signatory to the arbitration agreement between Shaner and H&S Homes, however, in certain circumstances non-signatories may be compelled to arbitrate. *See, e.g., Employers Ins. of Wausau v. Bright Metals Specialties Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Courts, however, have recognized a number of theories under which non-signatories may be bound to the arbitration agreements of others. These theories arise out of common law principles of contract and agency law: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and estoppel.") (internal citations omitted). Here, Shaner argues that Horton Homes can be compelled to arbitrate because H&S Homes, which did sign the arbitration agreement, was

the mere instrumentality or alter ego of Horton Homes. Put another way, Shaner contends that this is a case in which the corporate veil of H&S Homes should be pierced and the separate corporate entities of Horton Homes and H&S Homes should be disregarded.

The parties disagree over which state law applies to the veil-piercing issues. This Court agrees that veil-piercing issues concerning disregard of corporate form are to be determined by reference to the law of the state under which the corporation exists. *Se, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *Jefferson Pilot Broad. Co. v. Hilary & Hogan, Inc.*, 617 F.2d 133, 135 (5th Cir. 1980). Thus, because H&S Homes is a Georgia corporation, it is Georgia law which governs the issue of whether its corporate form should be disregarded and whether H&S Homes was a mere instrumentality or alter ego of Horton Homes.

Georgia law requires great caution in disregarding corporate form. To prevail based upon this theory

> it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.

*Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005). Further, in meeting this burden the party seeking to pierce the corporate veil, here Shaner, must show that the opposing party "disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Id. Accord, Scott Brothers, Inc. v. Warren*, 582 S.E.2d 224, 287 (Ga. App. 2003).

> [I]t must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such a unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud. Such evidence may include the owner using corporate funds for personal expenses or the owner treating all his companies and himself as one unit. This is a question for the jury even if there is compliance with some corporate formalities.

*Scott Brothers, Inc.*, 582 S.E.2d at 227 (internal citations omitted). The purpose of veil-piercing under Georgia law is "to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Baillie Lumber Co.,* 612 S.E.2d at 299.

Horton Homes is a Georgia corporate founded in 1970 as Rivers & Horton Homes, Inc. It formally began operating under the names Horton Homes, Inc. In 1996, when Horton Homes' production was at an all time high, it began to consider the prospect of investing in a partnership which would own retailer dealers that would sell Horton Homes' products directly to consumers. Ultimately, Horton Homes did enter into this business by forming a Georgia limited liability company known as American Manufactured Housing, LLC. The name of this limited liability company was changed to H&S Homes, L.L.C. in 1997. Horton Homes is the sole owner of H&S Homes. The corporate offices of H&S Homes are maintained within the corporate offices of Horton Homes in Eatonton, Georgia.[3] Horton Homes and H&S Homes maintain separate bank accounts and pay payroll taxes separately.

---

[3] Eatonton, Georgia is located in Putnam County, Georgia.

6

Dudley Horton is Chairman of the Board of Horton Homes, and he is also Chairman of the Board of H&S Homes. Horton Homes pays the salary of H&S Homes' President Steve Sinclair and provides his office space in Horton Homes' corporate headquarters.

In its business operations, H&S Homes held itself out to the public as being Horton Homes. Specific retail locations operated by Horton Homes were, with the knowledge and consent of Horton Homes, denominated as "Horton Homes of" the city in which the retail location was located. For example, the H&S Homes retail dealer in Montgomery was called "Horton Homes of Montgomery."

A consumer named Christina McDonald, who had purchased a home from H&S Homes, initiated an arbitration proceeding against H&S Homes which resulted in her being awarded $500,000. H&S Homes appealed. On December 17, 2004, the Alabama Supreme Court affirmed a $500,000 arbitration award against H&S Homes. *H&S Homes, L.L.C. v. McDonald*, 910 So. 2d 79 (Ala. 2004). In January 4, 2005, Horton Homes brought suit against H&S Homes to collect on debts H&S Homes owed to Horton Homes which had been providing its financial support. This case was brought in the Superior Court of Putnam County, Georgia. H&S Homes did not defend against the action and allowed Horton Homes to take a default judgment against it. Ultimately, Horton Homes obtained a judgment against H&S Homes in the amount of $22,003,000. This judgment was recorded in Putnam County, Georgia. Thereafter, H&S Homes successfully blocked McDonald's efforts to enforce the judgment arising out of her arbitration award in the Superior Court of Putnam County, Georgia.

Having reviewed and considered the evidence and testimony presented at the evidentiary hearing and the argument of the parties, the Court cannot find that Horton Homes has sufficiently demonstrated that it has a substantial likelihood of success on the merits. A jury may consider the evidence in this case and decide to pierce the corporate veil and enforce H&S Homes' arbitration agreement against Horton Homes. For this reason, the motion for preliminary injunction is due to be DENIED.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Motion for Preliminary Injunction (Doc. # 15) is DENIED to the extent that it seeks a preliminary injunction as to the Plaintiff's claims against William Shaner and DENIED as MOOT to the extent that it seeks a preliminary injunction as to the Plaintiff's claims against all defendants other than William Shaner.

2. Nothing in this Memorandum Opinion and Order is intended to have any effect on the Consent Preliminary Injunction (Doc. # 43) entered at the request of the parties with respect to the claims of Horton Homes against Larue Bandy, Marie Bandy, Patrick Pritchett, Elsie Fondren Averette, William Cruthirds, and Sherrie Cruthirds.

DONE this the 26th day of December, 2007.

                                                  /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

**1.** **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

   (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

   (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

   (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

   (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

   (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2. **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

   (a) **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

   (b) **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

   (c) **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

   (d) **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

   (e) **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3. **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4. **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).