UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HORTON HOMES, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07-CV-506-MEF |
| | ) | |
| LARUE BANDY, MARIE BANDY, | ) | |
| PATRICK PRITCHETT, WILLIAM | ) | |
| SHANER, ELSIE FONDREN | ) | |
| AVERETTE, WILLIAM CRUTHIRDS, | ) | |
| and SHERRIE CRUTHIRDS, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

**HORTON HOMES, INC.'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL**

NOW COMES Plaintiff Horton Homes, Inc. ("Plaintiff Horton" or "Horton Homes") and files this its Brief in opposition to Defendants' Motion to Compel [Docket No. 49], and states as follows:

## I.    **INTRODUCTION.**

Horton Homes has responded fully to all discovery requests that Defendants have served in this case by producing or agreeing to make available for inspection all responsive, non-privileged documents and information.    In response to Defendants' letters seeking additional documents and information, Horton Homes has explained its position in detail and has asked for additional clarification as to

exactly what documents and information Defendants seek.  Yet, rather than clarifying the additional documents and information they seek, Defendants simply filed their Motion to Compel, which is less than three pages long, cites no authority, and is not supported by any brief or affidavits.  Furthermore, Defendants still continue to demand unspecified information in response to discovery requests which Plaintiff Horton has fully answered.  Therefore, as explained in this Brief and in the supporting Declarations filed herewith, Defendants' Motion to Compel must be denied.

## II.    STATEMENT OF FACTS.

### A.    Background Facts.

This case arises from a dispute about arbitrability under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  The Defendants have attempted to force Horton Homes into arbitrations based entirely upon arbitration agreements to which Horton Homes is admittedly ***not*** a party.  Defendants each purchased a manufactured home that was built by Horton Homes (collectively, the "Subject Homes") from H&S Homes, LLC ("H&S Homes") a retail dealer that has sold manufactured homes at sales lots located in Alabama and throughout the Southeast.[1]  The purchase documents between H&S Homes and the Defendants

_____

[1] Defendant William Shaner ("Defendant Shaner") did not actually purchase a manufactured home from H&S Homes; instead, his mother, Cliffie Shaner, purchased the home from H&S Homes for him.

- 2 -

include arbitration agreements (the "Arbitration Agreements") that required each of the Defendants and H&S Homes to arbitrate any claims related to the Subject Homes. Only H&S Homes and Defendants were parties to these Arbitration Agreements; it is undisputed that Horton Homes is not a party to any of the Arbitration Agreements.

Although Horton Homes built the Subject Homes, Horton Homes is an entirely separate corporate entity from H&S Homes and has never entered into *any* arbitration agreement or other contract with the Defendants. Horton Homes is in the business of constructing manufactured homes at its plant and headquarters located in Eatonton, Georgia; it has never been in the retail business of selling manufactured homes to the public. (Declaration of Steve M. Sinclair ("Sinclair Declaration"), filed herewith, ¶ 5.) Horton Homes was formed in 1970 and has since built manufactured homes, which it has sold through a network of dealers.[2] H&S Homes was formed in 1996 and has since sold more than 7,000 manufactured homes at more than 45 different sales lots located throughout the Southeast. (*Id.*, 6.)

Although H&S Homes is a subsidiary of Horton Homes, H&S Homes has always maintained a separate corporate and financial existence from Horton

---

[2] The dealer network varies from year to year. Exhibit "2a" at the preliminary injunction hearing showed that during the ten-year period from 1997 to 2007, H&S Homes had from 9 to 47 sales lots.

Homes and has always purchased manufactured homes from Horton Homes based on the same financial terms as all of the other dealers to which Horton Homes has sold its manufactured homes.  Accordingly, H&S Homes purchased and took title to each of the Subject Homes in transactions that were entirely separate from H&S Homes' sales transactions with the Defendants.  (Sinclair Declaration, ¶ 7.)  Based on these transactions, Defendants (with the exception of Mr. Shaner) and H&S Homes entered into contracts including retail installment contracts and the Arbitration Agreements.  (Complaint [Docket No. 1] (Exhibits "A" through "E").)

The Defendants have subsequently alleged claims concerning the Subject Homes, including allegations that they did not receive furniture and other equipment that should have come with the Subject Homes, and that they failed to benefit from certain rebates associated with the sale of the Subject Homes. Because Defendants admit that their claims concerning the Subject Homes are inside of the Arbitration Agreements, Defendants asserted these claims against H&S Homes in arbitrations filed pursuant to the Arbitration Agreements.

Although Defendants admit that Horton Homes is *not* a party to any of the Arbitration Agreements, Defendants have nonetheless attempted to include Horton Homes as a respondent in their arbitrations filed pursuant to the Arbitration Agreements.  Because Defendants are stuck with the fact that Horton Homes is not a party to any of the Arbitration Agreements, Defendants are relegated to arguing

that Horton Homes is subject to the Arbitration Agreements as the alter ego of H&S Homes.

Horton Homes has consistently and repeatedly objected to the arbitrability of these arbitrations on the ground that Horton Homes cannot be subject to the jurisdiction of any arbitrator because Horton Homes is not a party to the Arbitration Agreements. Horton Homes' opposition has included the filing of this action, in which Horton Homes seeks declaratory and injunctive relief to establish that Horton Homes is not subject to arbitration based on the Arbitration Agreements.

**B.     Posture and Status of this Case.**

Since Horton Homes filed this action on June 8, 2007, the parties have engaged in discovery and participated in an evidentiary hearing before Judge Fuller on Horton Homes' Motion for Preliminary Injunction [Docket No. 15], which sought to prevent Defendants from proceeding with arbitrations against Horton Homes during the pendency of this action. Before that hearing, the parties agreed to a Consent Preliminary Injunction [Docket No. 43] as to all Defendants other than Mr. Shaner.

With respect to Defendant Shaner, a day-long evidentiary hearing for Horton Homes' Motion for Preliminary Injunction was held on November 20, 2007, during which Horton Homes tendered thousands of pages of corporate records and other

documents as exhibits, along with testimony, to demonstrate that Horton Homes is separate from, and therefore not the alter ego of, H&S Homes. Because these documents relate specifically to the issue of alter ego and to the separateness of Horton Homes and H&S Homes, many of these tendered exhibits were responsive to Defendants' discovery requests which were served after the November 20 hearing. Attached to this Brief as Exhibit "A" is a list of the documents already in the record that bear directly on the issue of alter ego that is at the center of this case.

Presently, the parties are proceeding toward a jury trial on Horton Homes' claims against all Defendants for declaratory and injunctive relief, according to the Court's January 10, 2008 Scheduling Order [Docket No. 48].

### C.   The Discovery Dispute Alleged by Defendants.

Defendants have served several sets of interrogatories and document requests on Horton Homes in this action. Horton Homes has timely responded to these, and the parties have engaged in substantial good faith discussions in an effort to settle discovery issues on their own. Specifically, on January 25, 2008 and again on February 9, 2008, Horton Homes' counsel sent two letters totaling fourteen pages in length, which respond in detail to all of the issues raised by

Defendants.[3]   Although the Defendants have previously raised numerous issues concerning their interrogatories and document requests, their three-page Motion to Compel addresses only four.   These four issues are briefly addressed in this Section, with the detailed treatment provided in Section III below.

The *first* issue concerns the location where Defendants will inspect more than 7,000 documents that Horton Homes has agreed to produce.  (Defendants' Motion to Compel, ¶ 2 (concerning Defendants' Request for Production Nos. 4, 7-11).)  Specifically, Defendants have requested production of all contracts and agreements between Horton Homes and H&S Homes, which include invoices (the "Invoices") for each of the more than 7,000 manufactured homes that Horton Homes sold to H&S Homes over more than a decade.  (Sinclair Declaration, ¶¶ 7-8.)  The Invoices recite the terms and price of each home sold and are therefore responsive to Defendants' requests.

Because these Invoices are kept and maintained in sales folders (the "Sales Folders") at Horton Homes' headquarters in Eatonton, Georgia, along with other documents related to each sale (*id.*, ¶ 8-9), Horton Homes has offered to produce these Invoices for inspection at its headquarters, where they have been segregated

---

[3] These letters are referred to in this Brief as the "January 25 Letter" and the "February 9 Letter" and collectively as "Horton Homes' Letters".   Horton Homes has filed copies of the Horton Homes Letters as exhibits to the Declaration of James L. Paul, filed herewith.   These letters include verbatim quotations of the issues raised by Defendants.

and moved into separate rooms for that purpose.[4]  (January 25 Letter, pp. 2-4; February 9 Letter, p. 2.)  Overall, the Sales Folders consist of more than 10,000 pages of documents and would fill nearly 100 banker's boxes.    (Sinclair Declaration, ¶ 9.)

Because of the massive volume of responsive documents, Horton Homes has twice asked Defendants to confirm that they intend to inspect the more than 7,000 Invoices, which seem to have little relevance to the alter ego issue in this case. (January 25 Letter, p. 3; February 9 Letter, p.2)  Defendants' only response has been to file their Motion to Compel in which they claim, without citing any supporting authority, a right to "receive" all responsive documents at the offices of their counsel in Montgomery.  (Defendants' Motion to Compel, ¶ 2.)

Also, because these documents contain confidential information relating to customers who purchased manufactured homes built by Horton Homes, Horton Homes requires that any copies of the Invoices be made with customer information redacted, since that personal information does not relate to the issue of alter ego that is at issue in this case.

---

[4] The Sales Folders are files that are kept and maintained by H&S Homes. Although these are not documents of Horton Homes, Horton Homes is producing them because they are within its "possession, custody or control" for purposes of Fed. R. Civ. P. 34(a).  *See, e.g., Hubbard v. Rubbermaid, Inc.*, 78 F.R.D. 631, 637 (D. Md. 1978) (requiring parent corporation to produce documents possessed by wholly owned subsidiary).

The **second** issue concerns Defendants' request for "any and all documents touching, concerning, or pertaining to" a state court lawsuit (the "Horton/H&S Lawsuit")[5] in which Horton Homes obtained a default judgment against H&S Homes in a suit to collect on promissory notes that H&S Homes owed to Horton Homes. (Defendants' Motion to Compel, ¶ 3 (concerning Defendants' Request for Production No. 13).) Defendants' counsel already possess the entire court record for this lawsuit, which consists of only eight pages, including a summons and a form showing proof of service.[6]

Horton Homes has offered to produce the underlying promissory notes that framed the basis for the lawsuit, along with the other documents that will be made available for inspection in Eatonton, Georgia. In addition, Horton Homes has already produced substantial information about the debt underlying the Horton/H&S Lawsuit through exhibits tendered at the November 20, 2007 preliminary injunction hearing. (*See* Exhibit "A" hereto.) Because it is unclear what other documents Defendants request, Horton Homes has asked for clarification as to the additional documents that they seek concerning the

---

[5] Horton Homes filed this lawsuit in the Superior Court of Putnam County, Georgia, under the caption: *Horton Homes, Inc. v. H&S Homes, LLC*, in the Superior Court of Putnam County, Georgia, Civil Case No. 2005CV04-01.

[6] Defendants' counsel have previously introduced the court record for the Horton/H&S Lawsuit as an exhibit in an arbitration that Defendant Shaner filed against Horton Homes and H&S Homes.

Horton/H&S Lawsuit. (January 25 Letter, p. 3; February 9 Letter, p. 2). Defendants have responded by filing a Motion to Compel that demands the production of unspecified documents concerning the Horton/H&S Lawsuit.

The *third* issue concerns Defendants' request for each arbitration agreement "that was included in the sale of each mobile home to each Defendant in this case". (Defendants' Motion to Compel, ¶¶ 4-5 (concerning Defendants' Request for Production No. 19).) Horton Homes is at a loss about how to supplement the Record with additional responsive information, because it has already filed the responsive arbitration agreements as exhibits to its Complaint [Docket No. 1]. Furthermore, although Defendants argue that additional arbitration agreements exist in the homeowners' manual or warranty associated with the Subject Homes, there are no such agreements, as evidenced by the homeowners' manual and warranty that Horton Homes has *already* produced to Defendants.

Finally, the *fourth* issue concerns Defendants' request for bank account information concerning H&S Homes. (Defendants' Motion to Compel, ¶¶ 6-8 (concerning Defendants' Interrogatory No. 25).) Defendants incorrectly suggest that Horton Homes has failed to respond to this Interrogatory. Instead, Horton Homes has already identified the banks where the accounts were held and has agreed to provide the confidential account numbers, pursuant to a mutually acceptable protective order. Horton Homes has provided a proposed protective

order to Defendants for consideration. Once that is agreed upon, there will be no dispute about this information, which Horton Homes has already agreed to produce.

## III.    ARGUMENT AND CITATION OF AUTHORITIES.

### A.    Issue 1: Defendants' Motion to Compel Should Be Denied Because a Voluminous Production Including More Than 7,000 Documents Generated Over More Than a Decade Should Occur at Horton Homes' Office in Eatonton, Georgia, Rather Than in Montgomery, Alabama.

As explained above in Section II.C, Defendants' request for all agreements between Horton Homes and H&S Homes includes more than 7,000 Invoices. These Invoices each consist of two-to-three pages, and are each filed and maintained in a Sales Folder, along with other documents related to each manufactured home sold. (Sinclair Declaration, ¶ 8-9.) Therefore, Defendants' request for all agreements between Horton Homes and H&S Homes includes well over 10,000 pages of Invoices, which in turn are filed among tens of thousands of other documents in the Sales Folders. (*Id.*) Because Defendants have requested to "receive" these documents at their counsel's office in Birmingham, the requested production would require either (i) moving a large truck load or truck loads of documents to and from Montgomery, or (ii) pulling each of the more than 7,000 Invoices from each of the more than 7,000 Sales Folders, transporting them to Montgomery, and then replacing them in the appropriate Sales Folder.

So that the Invoices could be inspected by Defendants' counsel in this case, Horton Homes has segregated all Sales Folders containing the Invoices and has put them in several adjacent rooms at its headquarters, where they have been available for inspection since December 2007. (*Id.*, ¶ 10.) As indicated by the pictures that are attached as Exhibit "A" to the Sinclair Declaration, the Sales Folders are filed in both steel file cabinets and in banker's boxes. (*Id.,* ¶ 11.) Altogether, the Sales Folders would fill nearly 100 banker's boxes. (*Id.*, ¶ 9.) Because the Invoices are filed in Sales Folders, it would take a substantial amount of effort to find, pull, copy, and later re-file the more than 7,000 Invoices.

As explained above in Section II.C, this dispute does not concern whether Defendants can inspect the Invoices, because Horton Homes has agreed to produce them, and other requested documents, at its headquarters in Eatonton, Georgia. (January 25 Letter, pp. 2-4; February 9 Letter, p. 2.) Because of the voluminous nature of this production of documents that are of questionable relevance to the alter ego issues involved in this case, Horton Homes has also asked Defendants' counsel to confirm that Defendants want to inspect all of the Invoices. (January 25 Letter, p. 3; February 9 Letter, p. 2) Defendants have never responded. Instead, Defendants' Motion to Compel simply devotes a single paragraph to this issue and demands to "receive" these voluminous, unspecified documents at their offices in Montgomery, Alabama. Defendants have not explained their need for these

Invoices; nor have Defendants provided *any* authority requiring inspection to occur at their offices.

As explained below, production of these voluminous documents for inspection at Horton Homes' offices is consistent with (i) Fed. R. Civ. P. 34 and applicable case law; (ii) this Court's "Guidelines to Civil Discovery Practice in the Middle District of Alabama" (the "Guidelines"); and (iii) the manner of production contemplated by Defendants' own Requests for Production.

1.    <u>Horton Homes Has Complied with Fed. R. Civ. P. 34 by Offering to Make Requested Voluminous Documents Available for Inspection at Its Headquarters.</u>

Horton Homes' offer to produce the Invoices in their Sales Folders at its headquarters complies with Fed. R. Civ. P. 34. Rule 34 does not require copying and delivery of requested documents; instead, it only requires production of documents for "inspection" by the requesting party. Rule 34 also does not require Horton Homes to remove and segregate the Invoices from the files in which they are kept; instead, Rule 34 only requires production of documents "as they are kept in the usual course of business". Fed. R. Civ. P. 34(b)(ii). The requested Invoices are ordinarily maintained in Sales Folders, and Horton Homes has offered to produce them for inspection in that very manner. (January 25 Letter, pp. 2-4; February 9 Letter, p. 2.)

Furthermore, Rule 34 does not entitle Defendants simply to "receive" a copy of requested documents at the offices of their counsel, as they demand. (Defendants' Motion to Compel, ¶ 2.)  Instead, Rule 34 contemplates a "reasonable time, place, and manner" for inspection.  Fed. R. Civ. P. 34(b).  Accordingly, when the volume of material sought would make copying and transporting documents burdensome and oppressive to the producing party, Courts will require the requesting party to conduct the Rule 34 inspection where the documents are kept and maintained.  As this Court has recognized, "when the volume of material sought would make copying and shipment difficult and oppressive for the party in possession, . . . the court may . . . order inspection in a manner convenient to the party in possession".  *Baine v. General Motors Corp.*, 141 F.R.D. 328, 331-32 (M.D. Ala. 1991).  *See also Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 883 (3d Cir. 1981) ("[g]enerally, inspection is required when the requested material is so voluminous that copying and transporting it would prove unduly burdensome and oppressive").  Also, a party producing documents for inspection under Rule 34 is not required to bear the expense of copying any of the documents.  *See, e.g., Monarch Ins. Co. v. Spach*, 281 F.2d 401, 413 n.30 (5th Cir. 1960).

2.    <u>This Court's Discovery Guidelines Recognize the Reasonableness and Need for Producing Voluminous Documents Where They Are Kept and Maintained</u>.

Defendants' inspection of the Invoices in Eatonton, Georgia, is also consistent with this Court's own Guidelines. Guideline III.B addresses production of documents. Guideline III.B.7 directs counsel to reach an "agreement based upon considerations of reasonableness and convenience" with respect to production. Accordingly, although Guideline III.B.1 permits a party to request production "at the office of either counsel" as "a matter of convenience", it also states that "[t]he court expects lawyers to make reasonable accommodations to one another with respect to the place of production of documents".

Based on these considerations, the Guidelines clearly contemplate inspections on the premises of the producing party, especially where, as here, a large volume of documents is involved. Specifically, Guideline III.B.5 recognizes that production of "larger quantities" of documents may reasonably require "the inspecting party to furnish both the personnel and the photocopying equipment (perhaps by delivery of rental equipment to ***the premises of the producing party)***". (Guideline III.B.5 (emphasis added); *see also* Guideline III.B (anticipating document inspection at warehouses and the like by directing that, "[n]aturally, whatever comfort and normal trappings of civilization are reasonably available should be offered").)

3.    Production of the Required Documents in Eatonton, Georgia, Complies with Defendants' Requested Manner of Production.

Inspection of the voluminous number of requested documents at Horton Homes' offices in Eatonton, Georgia, is also consistent with the manner of production that Defendants have requested. Specifically, Defendants' Second Document Requests attempt to have documents produced, as follows:

in the file folder or other container in which they are maintained or stored, and that the order or sequence of the documents, if more than one within a file is requested, *be in the same order or sequence within such file as was maintained in the ordinary course of business just prior to the production thereof*.

(Defendants' Second Document Requests (emphasis added).)

Recognizing that Horton Homes can produce the invoices and other documents in the files where they are kept in the ordinary course of business means that the requested voluminous production should occur where the voluminous documents are kept. Given Defendants' requested means of production, Defendants would effectively have to dismantle and transport file rooms full of documents if production were to occur in Montgomery, as now requested.

**B.   Issue 2:  Defendants' Motion to Compel Additional Documents Relating to the Horton/H&S Lawsuit Must Be Denied Unless: (1) Defendants Specify What Additional Documents Are Requested; and (2) Horton Homes Refuses to Produce Those Documents.**

As explained above in Section II.C, Defendants continue to demand additional documents in response to their request for "any and all documents touching, concerning or pertaining to" the Horton/H&S Lawsuit.  Horton Homes cannot provide any additional information in response, without some direction from Defendants about what type of documents they seek.  Although Horton Homes has requested such clarification (January 25 Letter, p. 4), Defendants have only filed their Motion to Compel which again fails to specify the nature of this request.

The Horton/H&S Lawsuit is not a mystery and Horton Homes is not trying to conceal anything about it.  Defendants' counsel already possess the entire, eight-page Court record for it.  Horton Homes has agreed to produce for inspection the underlying promissory notes that are the basis for the suit.  Also, at the November 20, 2007 preliminary injunction hearing, Horton Homes tendered exhibits including (i) all corporate minutes of Horton Homes, which include discussion of the Horton/H&S Lawsuit (as Exhibits 36 and 37), and (ii) extensive work papers for Horton Homes' annual financial audits, which show, on an annual

basis, the balance and status of the Horton Homes/H&S Homes intercorporate debt that is the subject of the lawsuit (as Exhibits 21, 22, and 26-35).

Therefore, Horton Homes does not know what else it can produce in response to Defendants' request for documents concerning the Horton/H&S Lawsuit. Even after asking for guidance and clarification from Defendants, Defendants' only response has been in a single paragraph of their Motion to Compel in which they seek additional, but unspecified, documents concerning the Horton/H&S Lawsuit. (Defendants' Motion to Compel, ¶ 3.)

Because Horton Homes has done what it can to produce the requested information, it is not properly subject to a motion to compel until (i) Defendants have made a reasonable demand for extant, non-privileged information within its document request, and (ii) Horton Homes has refused to produce this information. Neither of these events has occurred.

C. **Issue 3:  Defendants' Motion to Compel Production of Alleged Arbitration Agreements Must Be Denied Because Horton Homes' Response Shows That the Requested Arbitration Agreements Have Already Been Produced, to the Extent They Exist.**

As explained above in Section II.C, Defendants have moved to compel production of "each and/or every arbitration agreement that was included in the sale" of each of the Subject Homes. (Defendants' Motion to Compel, ¶ 5.) As Defendants recognize, Horton Homes has already shown that it has responded by producing the Arbitration Agreements which underlie this case. (*Id.*) Defendants

claim this is insufficient, however, because they believe that additional arbitration agreements may exist in the homeowners' manual and warranty for each of the Subject Homes. Yet, Horton Homes has already produced a copy of the manual and warranty to Defendants, neither of which contains any arbitration agreement whatsoever. Horton Homes cannot be compelled to produce more, because the requested arbitration agreements do not exist.

Furthermore, Defendants' proposed solution to this alleged discovery dispute is contrary to the Federal Rules of Civil Procedure. Defendants seek additional arbitration agreements pursuant to their Request for Production of Documents No. 19, which, of course, requires production of documents pursuant to Rule 34. Yet, Defendants seek to compel Horton Homes to "state under oath that there are no other Arbitration Agreements". (Defendants' Motion to Compel, ¶ 5.) Effectively, Defendants are trying to use a request for production under Rule 34 to obtain evidence that must be obtained either by interrogatories through Rule 33 or by deposition through Rules 30 or 31.

Because Horton Homes has fully responded to Defendants' Request No. 19, there is no response to compel. To the extent that Defendants wish to inquire about the facts related to any arbitration agreements, Defendants must pursue that through the proper and currently available means of discovery.

**D.     Issue 4:     Defendants' Motion to Compel Bank Account Information Must Be Denied Because Such Information Should Not Be Produced in the Absence of a Protective Order.**

As explained above in Section II.C, Defendants have moved to compel information about bank accounts held by H&S Homes.  (Defendants' Motion to Compel, ¶¶ 7-8.)  Although Horton Homes has responded by identifying the banks associated with the requested accounts and has agreed to provide the account numbers pursuant to a mutually acceptable protective order, Defendants incorrectly suggest in their Motion that Horton Homes has simply objected to their Interrogatory seeking that information.

Horton Homes has already responded with all of the requested information other than the confidential account numbers, which it will produce once a protective order is in place.  Counsel for Horton Homes has provided a protective order to Defendants' counsel and anticipates soon to present it for the Court's consideration.  Therefore, there is no information to compel with respect to this issue.

## IV.     CONCLUSION.

Defendants are not entitled to compel any additional information on any of the four issues identified in their Motion to Compel.  Instead, as explained above and in the supporting Declarations filed herewith, Plaintiff Horton has fully responded to Defendants' discovery requests by producing, or agreeing to make

available for inspection, all responsive, non-privileged information. Therefore,

Defendants' Motion to Compel must be denied.

Dated this 6th day of March, 2008.

By: _____

    JAMES L. PAUL
    *Georgia Bar No. 567600*
    THOMAS C. GRANT
    *Georgia Bar No. 297455*
    (Admitted Pro Hac Vice)

    *Counsel for Plaintiff Horton Homes, Inc.*

*Chamberlain, Hrdlicka, White, Williams & Martin*
191 Peachtree Street, N.E., 34th Fourth Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 (Facsimile)
*james.paul@chamberlainlaw.com*

SYDNEY F. FRAZIER
SJIS #FRA007
*Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP*
Suite 700
2001 Park Place North
Birmingham, Alabama 35203
(205) 716-5291
(205) 716-5389 (Facsimile)
*sff@cabaniss.com*

*Co-Counsel for Plaintiff Horton Homes, Inc.*

275037.1

**<u>EXHIBIT "A"</u>**
**<u>TO</u>**
**<u>HORTON HOMES, INC.'S BRIEF IN OPPOSITION</u>**
**<u>TO DEFENDANTS' MOTION TO COMPEL</u>**

## LIST OF ADMITTED EXHIBITS CONCERNING ALTER EGO ISSUE THAT WERE TENDERED BY PLAINTIFF HORTON HOMES, INC. AT THE 11/20/07 PRELIMINARY INJUNCTION HEARING

| PLAINTIFF'S EXHIBIT # | DESCRIPTION |
|---|---|
| 8 | Incorporation Documents for Horton Homes Inc. |
| 9 | Incorporation Documents for H&S Homes, LLC. |
| 10 | IRS Form 941 (Employer's Quarterly Federal Tax Return) for H&S Homes, LLC (for years 2000-2006). |
| 11 | IRS Form 941 (Employer's Quarterly Federal Tax Return) for Horton Homes, Inc. (for years 2000-2006). |
| 13 | Ad Valorem Tax Returns for Horton Homes, Inc. (for years 2000-2006). |
| 14 | Sales Tax Returns for H & S Homes, LLC (for years 1999-2006). |
| 15 | Sales Tax Returns for Horton Homes, Inc. (for years 1999-2006). |
| 16 | Bank Statements for H&S Homes, LLC's Operating Bank Account (for December 2000 and December 2006). |
| 17 | Bank Statements for Horton Homes, Inc.'s Operating Bank Account (for December 2000 and December 2006). |
| 19 | Income Tax Returns for Horton Homes, Inc. (for years 1999-2006). |
| 20 | Income Tax Returns for H&S Homes, LLC (for years 1999-2006). |
| 21 | Audited Financial Statements for Horton Homes, Inc. (for years 1999-2006). |
| 22 | Audited Financial Statements for H&S Homes, LLC (for years 1999-2006). |
| 25 | Default Judgment Obtained by Horton Homes, Inc. against H&S Homes, LLC in Putnam County, Georgia, Superior Court to Collect on Promissory Notes. |
| 26 | Work Papers Associated with Financial Audit of Horton Homes, Inc. for 2002. |
| 27 | Work Papers Associated with Financial Audit of Horton Homes, Inc. for 2003. |

| PLAINTIFF'S EXHIBIT # | DESCRIPTION |
|---|---|
| 28 | Work Papers Associated with Financial Audit of Horton Homes, Inc. for 2004. |
| 29 | Work Papers Associated with Financial Audit of Horton Homes, Inc. for 2005. |
| 30 | Work Papers Associated with Financial Audit of Horton Homes, Inc. for 2006. |
| 31 | Work Papers Associated with Financial Audit of H&S Homes, LLC for 2002. |
| 32 | Work Papers Associated with Financial Audit of H&S Homes, LLC for 2003. |
| 33 | Work Papers Associated with Financial Audit of H&S Homes, LLC for 2004. |
| 34 | Work Papers Associated with Financial Audit of H&S Homes, LLC for 2005. |
| 35 | Work Papers Associated with Financial Audit of H&S Homes, LLC for 2006. |
| 36 | Complete Corporate Minutes of Horton Homes, Inc. |
| 37 | Complete Corporate Minutes of H&S Homes, LLC. |

275250.1
730302-000067:3/5/2008

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this date served a true and correct copy of the within and foregoing "Horton Homes, Inc.'s Brief in Opposition to Defendants' Motion to Compel" on the following parties, through the Court's CM/ECF system and by manner of service as indicated below, in properly addressed envelopes, with adequate postage affixed thereon, as necessary, addressed as follows:

Michael S. Harper
213 Barnett Boulevard
P.O. Box 780608
Tallassee, Alabama  36078
*(Via Certified Mail, RRR 7007 0710 0002 1405 7205)*

Frank H. Hawthorne, Jr.
Randy A. Myers
Hawthorne & Myers LLC
322 Alabama Street
Montgomery, Alabama  36104
*(Via Certified Mail, RRR 7007 0710 0002 1405 7212)*

Dated this 6th day of March, 2008.

By: _____
JAMES L. PAUL
*Georgia Bar No. 567600*
THOMAS C. GRANT
*Georgia Bar No. 297455*
(Admitted Pro Hac Vice)

*Counsel for Plaintiff Horton Homes, Inc.*

*Chamberlain, Hrdlicka, White, Williams & Martin*
191 Peachtree Street, N.E., 34th Fourth Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (Facsimile)
*james.paul@chamberlainlaw.com*