UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HORTON HOMES, INC.

      PLAINTIFF

VS.                                      2:07-cv-506-MEF

LARUE BANDY, ET. AL.,

      DEFENDANTS

## MOTION TO STRIKE DESIGNATION OF EXPERT WITNESS

Come now the Defendants herein, who move this Honorable Court for the entry of an Order striking Henry H. Hutchinson as an expert who may be available to testify at the trial of the above styled cause as an expert witness. In support of this motion, your Defendants say as follows:

1. Pursuant to this Court's scheduling order (Document 48), Plaintiff was to designate any expert to give testimony at the trial of this case pursuant to Rule 701, 702 or 705 of the Federal Rules of Civil Procedure on or before May 16, 2008.

2. On May 16, 2008, Plaintiff designated Henry H. Hutchinson, Esquire, an attorney with the law firm of Capell and Howard, P.C. in Montgomery, Alabama, as a witness to testify at this cause.

3. Pursuant to this Court's scheduling order, Plaintiff was required to disclose not only the identity of the expert witness but also provide any reports of retained expert witnesses and fully comply with Rule 26(a)(2) in regard to the disclosure of expert testimony.

4. Rule 26(a)(2) states that the information to be provided by Plaintiff to Defendants regarding its expert must include "a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinion; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the proceeding four years."

5. Attached hereto is the report of testimony of Henry H. Hutchinson dated May 16, 2008, tendered by Plaintiff.

6.  The report fails to comply with this Court's scheduling order and Rule 26(a)(2) insofar as the information that is suppose to be produced.

7.  Specifically, the report fails to state the witness' specific opinions to be expressed at the trial of this case and the basis and the reasons therefor. No data or other information considered by the witness in forming the opinions has been identified and disclosed. No specific exhibits were provided to be used as a summary of or support for the opinions. Basically, the facts and data supporting any opinions which Mr. Hutchinson may express were not adequately documented in report as required by the applicable rule.

WHEREFORE, your Defendants respectfully pray that this Court will enter an order striking Mr. Hutchinson as an expert witness which may be called at the trial of the above styled cause and grant to your Defendants such other, further and different relief as may be just and appropriate.

                                        MICHAEL S. HARPER,
                                        A PROFESSIONAL CORPORATION

213 Barnett Boulevard                    /s/ Michael S. Harper
Post Office Box 780608                  MICHAEL S. HARPER - HAR094
Tallassee, Alabama 36078              Attorney for Plaintiff
Telephone: 334-283-6855

OF COUNSEL:
Frank H. Hawthorne, Jr.
Randy A. Myers
Hawthorne & Myers, L.L.C.
322 Alabama Street
Montgomery, Alabama 36104

CERTIFICATE OF SERVICE

I hereby certify that I have this 23rd day of July, 2008 filed the above pleading/discovery electronically with the CM/ECF E-Filing System in Federal District Court. The below counsel will receive a copy from the system via e-mail if registered in the system. If not, I certify that I have placed a copy of the same in the U.S. mail this date.

1. Sydney F. Frazier, Jr., Esquire
   2001 Park Place North, Suite 700
   Birmingham, Alabama 35203

2. James L. Paul, Esquire
   Thomas C. Grant, Esquire
   191 Peachtree Street, N.E., 34th Floor
   Atlanta, Georgia 30393.

/s/ Michael S. Harper
OF COUNSEL

HORTON HOMES, INC.
(UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF ALABAMA
CIVIL ACTION NO. 2:07-CV-506-MEF)

REPORT OF TESTIMONY OF HENRY H. HUTCHINSON
MAY 16, 2008

I am a shareholder in the Montgomery, Alabama, law firm of Capell & Howard, P.C. I was admitted as a member of the Alabama State Bar in 1975 and have practiced corporate and business law continuously since 1976, after obtaining my masters of tax law degree. My legal practice encompasses a broad range of activities in the business law area. I typically advise clients regarding matters concerning organizational and operational legal issues, tax and securities laws, and certain regulatory-compliance-related matters. My publications and lectures are identified in the attached biography.

I understand that I will be expected to testify with respect to the organization and operation of limited liability companies and other legal entities as part of a multi-company organization and, specifically, the relationship of Horton Homes, Inc. ("Horton Homes") and H&S Homes, L.L.C. ("H&S"). Generally, my testimony is expected to address matters related to the so-called piercing of the corporate veil and potential liability of one business entity for the obligations of another under an alter ego theory. Among the matters to which I may testify are:

- The operations and relationships of parent and subsidiary organizations and, in particular, a parent corporation with a single member limited liability company as its subsidiary. The relationship of Horton Homes and H&S as parent and subsidiary and the operations of each company were customary and ordinary in comparison with other closely held corporations and limited liability companies.

- The relevance of fraudulent, abusive, or other wrongful conduct by the parent, the subsidiary, or their controlling persons in order to pierce the corporate veil of the parent or successfully assert a claim based upon the alter ego theory. Horton Homes as the parent did not take unfair advantage of H&S or engage in fraudulent or abusive or other wrongful conduct to adversely affect H&S or its creditors, suppliers, or customers.

- The control by a parent organization of one or more of its subsidiary organizations. The control exercised by Horton Homes over H&S, as its sole owner, was necessarily substantial. However, that degree of control and exercise of its authority was no greater or more extensive than customarily exercised by the parent organization of many single member limited liability companies.

- The use of consolidated income tax returns and consolidated financial statements by members of a group of affiliated organizations. It is customary for members of a group of affiliated organizations such as Horton Homes and H&S to file consolidated income tax returns and consolidated financial statements and, in some instances, affiliated organizations are essentially required to do so.

- The importance of adequate capitalization of a subsidiary at the inception or formation of the subsidiary relative to the successful assertion of a claim of piercing the corporate veil or based upon an alter ego theory. Horton Homes provided, by means of subordinated loans, substantial capital to H&S,

2

which capital enabled H&S to conduct its operations for a substantial period of time.

- The relevance and importance of separately maintained books and records and the significance of distinct business operations of the members of a group of affiliated organizations. H&S as the subsidiary company maintained separate books and records from the parent and conducted distinctly different businesses from that of the parent.

- The nature of the organization and operation of Horton Homes and H&S during the relevant time period, including 1998 through 2001. The organization and operation of the companies during that period were customary and ordinary and consistent with a properly conducted parent-subsidiary relationship.

- The degree of formality and attention to detail followed by H&S and its management in comparison to that of a typical closely-held limited liability company. The formalities and attention to detail followed by H&S in its management exceeded that followed by many closely-held limited liability companies.

- The effect of the organization and operation of Horton Homes and H&S upon the creditors, suppliers, and customers of H&S. The organization and operation of Horton Homes and H&S was not detrimental to the creditors, suppliers, and customers of H&S during the relevant time period, but rather benefited them, sometimes to the detriment of Horton Homes.

3

My testimony will be based upon my education, training, experience, and research, regarding business organizations and their operations and relationships generally. My testimony will also be based in part upon my review of materials and documents relevant to this particular litigation including the organizational and operational documents of H&S, the financial statements of Horton Homes and H&S for the relevant periods, and my review of the transcript of testimony and other evidence presented at the hearing on a motion for preliminary injunction that was conducted on November 20, 2007.

I have been and will be compensated for my services rendered in connection with this case at the rate of $290 per hour. I have not testified as an expert witness during the past four years.

_____
Henry H. Hutchinson

4