UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **HORTON HOMES, INC.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07-cv-506-MEF |
| | ) |
| **LARUE BANDY, MARIE BANDY,** | ) |
| **PATRICK PRITCHETT, WILLIAM** | ) |
| **SHANER, ELSIE FONDREN** | ) |
| **AVERETTE, WILLIAM CRUTHIRDS,** | ) |
| **and SHERRIE CRUTHIRDS,** | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT'S SUPPLEMENTAL DESIGNATION OF EVIDENCE SUPPORTING THEIR MOTION TO COMPEL DEPOSITION OF TRIANGLE HOMES REPRESENTATIVES

COME NOW your Defendants herein, and designate the following deposition testimony of R. W. Hicks, Jr., attached hereto, in support their Motion to Compel the Depositions of Representatives and officers of Triangle Homes, LLC:

1. Page 2, Lines 8-25;

2. Page 3, Lines 1-25;

3. Page 4, Lines 1-23;

4. Page 8, Lines 8-25

5. Page 9, Lines 1-4;

6. Page 11, Lines 20-25;

7. Page 12, Lines 1-11;

8. Page 15, Lines 5-25;

    9. Page 16, Lines 1-14;

    10. Page 17, Lines 2-25;

    11. Page 18, Lines 18-21;

    12. Page 26, Lines 2-25;

    13. Page 27, Lines 1-25; and

    14. Page 28, Lines 1-12.

Respectfully submitted on this the 30th day of July, 2008.


          */s/ Frank H. Hawthorne, Jr.*
          FRANK H. HAWTHORNE, JR. (HAW012)
          Attorney for Defendants


OF COUNSEL:
Hawthorne & Myers, LLC
322 Alabama Street, Suite A
Montgomery, AL  36104
(334) 269-5010 / (334) 834-0080 Fax

OF COUNSEL:
Michael S. Harper
P.O. Box 780608
Tallassee, AL  36078
(334) 283-6855
(334) 283-6858 Fax

**CERTIFICATE OF SERVICE**

      I hereby certify that I have on this the 30th day of July, 2008, filed the above pleading/discovery electronically with the CM/ECF E-Filing System in Federal District Court. The below counsel will receive a copy from the system via email if registered in the system. If not, I certify that I have placed a copy of the same in the U.S. mail and sent by facsimile this day.

Sydney F. Frazier, Jr., Esq.
Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP
2001 Park Place North, Suite 700
Birmingham, AL  35203

James L. Paul, Esq.
Thomas C. Grant, Esq.
Chamberlin, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, GA  30303

                                          */s/ Frank H. Hawthorne, Jr.*
                                          OF COUNSEL

# DEPOSITION TESTIMONY OF
# R. W. HICKS, JR.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HORTON HOMES, INC.,                    :
                                       :
            Plaintiff,                 :
                                       :
vs.                                    :  CIVIL ACTION
                                       :  NO. 2:07-CV-506-MEF
LARUE BANDY, MARIE BANDY,              :
PATRICK PRITCHETT, WILLIAM SHANER,     :
ELISE FONDREN AVERETT, WILLIAM         :
CRUTHIRDS, AND SHERRIR CRUTHIRDS,      :
                                       :
            Defendants.                :

MACON, GEORGIA              11:05 A. M.              JULY 22, 2008

The deposition of R.W. HICKS, JR. is being taken by the Defendants; testimony is being given before Janice B. Keene, Georgia Certified Court Reporter B-2336, in the offices of Hall, Bloch, Garland & Meyer, LLP, 577 Mulberry Street, Suite 1500, Macon, Georgia, on July 22, 2008, beginning at approximately 11:05 a. m.

---

APPEARANCES:


For the Plaintiff:        MR. JAMES L. PAUL
                          Chamberlain Hrdlicka
                          191 Peachtree Street, N.E.
                          Thirty-Fourth Floor
                          Atlanta, Georgia   30303-1747

For the Defendants:       MR. FRANK H. HAWTHORNE
                          MR. RANDY MYERS
                          Hawthorne & Myers
                          322 Alabama Street
                          Montgomery, Alabama 36104

1   No stipulations stated.

2   ----------------------------------------

3                        R.W. HICKS, JR.

4              having first been duly sworn by the

5                 court reporter, testified on

6                      CROSS-EXAMINATION

7   BY MR. HAWTHORNE:

8        Q    Give us your name, please, sir.

9        A    Russ Hicks.

10            MR. PAUL:    Let's clarify.  Is this a 30(b)(6)

11       -- this is a 30(b)(6) deposition.

12            MR. HAWTHORNE:    I'm fixing to do that.

13            MR. PAUL:    Go ahead.

14            MR. HAWTHORNE:    I'm getting preliminary stuff

15       first, but you're right.

16            MR. HAWTHORNE:    Q    Mr. Hicks, you received a

17  notice of deposition on behalf of Triangle Homes for both the

18  30(b)(6) representative, Triangle Homes, and the president?

19       A    I did.

20       Q    And I'm taking your deposition right now as the

21  30(b)(6) representative of Triangle Homes; do you understand

22  that?

23       A    Yes, sir.

24            MR. PAUL:    Excuse me.  And at this time, Mr.

25       Hawthorne, we will move to adjourn the deposition

```
 1        under Federal Rule of Civil Procedure 30(d)(3) on the
 2        following grounds:  On July the 1st, 2008, we file
 3        Plaintiff Horton Homes, Inc.'s Motion for Protective
 4        Order Prohibiting Discovery About Non-Party Entities
 5        Not the Subject of Claims or Defenses, which is
 6        Exhibit 514 to this deposition that we will put in.
 7        Second, the same day we filed what is called
 8        Evidentiary Submission by Plaintiff Horton Homes,
 9        Inc. in Support of Its Motion for Protective Order,
10        which is Exhibit 515 that we will put in evidence in
11        the deposition.
12   (MR. GRANT ENTERS)
13            MR. PAUL:      After those two motions were
14        filed, the Defendants filed the Rule 30(b)(6)
15        deposition notice related to Triangle, which is
16        Exhibit 501, and then we filed a supplemental motion
17        related directly to Triangle, which is called
18        Plaintiff Horton Homes, Inc.'s Supplemental Motion
19        for Protective Order Prohibiting Discovery about
20        Non-Party Entities Not the Subject of Claims or
21        Defenses, which is Exhibit 517 that we will put in
22        evidence in the deposition.
23   (MR. HALL ENTERS)
24            MR. PAUL:      So based on these motions,
25        there's a pending motion for protective order, and
```

1   Federal Rule of Civil Procedure 30(d)(3) provides

2   ~~that at any time during the deposition the deponent~~

3   or a party may move to terminated or limit it on the

4   grounds that it is being conducted in bad faith and

5   in a manner that unreasonably annoys, embarrasses, or

6   oppresses the prominent party.  The motion may be

7   filed in the court where the action is pending or the

8   deposition is being taken.  If the objecting deponent

9   or party so demands, the deposition must be suspended

10  for the time necessary to obtain an order.  And we do

11  so demand that the deposition be suspended and

12  adjourned pending the court entering an order on our

13  existing motion for protective order.

14          MR. HAWTHORNE:     Q     Mr. Hicks, does Mr. Paul and

15  Mr. Grant represent either you or Triangle Homes?

16          MR. PAUL:    We do represent Triangle Homes.

17          MR. HAWTHORNE:    I'm asking the witness.

18          MR. HAWTHORNE:     Q     Do these lawyers represent

19  you, as we sit here today?  Let's ask it in two questions.  Yes

20  or no.

21      A   As far as I know, yes.

22      Q   Do they represent Triangle Homes also?

23      A   As far as I know, yes.

24          MR. HAWTHORNE:    Okay.  You don't have a

25  ruling on the protective order.  We're prepared to go

1          MR. PAUL:    No.  We have moved for a
2    protective order as to any discovery relating to
3    Triangle Homes.
4    (MR. HALL ENTERS)
5          MR. PAUL:    The motion is pending, and we
6    respectfully demand that the deposition be adjourned
7    pending a ruling by the Court.
8          MR. HAWTHORNE:    Q    Are you the President of
9    Triangle Homes, LLC?
10     A    Yes.
11     Q    I'm going to ask you questions about Triangle Homes,
12   and if Mr. Paul wants to instruct you not to answer, that's
13   fine.  I need to identify you for the record first --
14         MR. PAUL:    Go ahead
15         MR. HAWTHORNE:    Q    -- preliminary matters.
16   What is your address, please, sir?
17     A    231 Rose Creek Road, Eatonton, Georgia.
18     Q    Is that your home address or business address?
19     A    Home.
20     Q    All Right.  What's your business address?
21     A    101 Industrial Boulevard.
22     Q    And where is that?
23     A    Eatonton, Georgia.
24     Q    And is that in the same building where Horton Homes,
25   Inc. does business?

```
 1      A    Yes.
 2      Q    Okay.  And how long has that been your business
 3 address, sir?
 4      A    30 years.
 5      Q    And if you would, give me your date of birth so we
 6 can identify you on the record, please, sir.
 7      A    12/10/67.
 8      Q    And I always say this preliminary, but I'm going to
 9 ask you some questions, and if you understand my question, I'd
10 appreciate an honest answer.  If you don't, I'll be happy to
11 repeat it or rephrase it so that you do understand it; is that
12 fair enough?
13           MR. PAUL:    I -- I am demanding the deposition
14      be adjourned.
15           MR. HAWTHORNE:    Jimmy, I haven't asked
16      anything about what your protective order is for.  So
17      I can take -- ask questions on these preliminary
18      matters as long as I want to, sir.  Now, are you
19      going to stop that, too?
20           MR. PAUL:    Let's see how many more questions
21      you ask.
22           MR. HAWTHORNE:    Thank you.
23           MR. HAWTHORNE:    Q    Now, if you give me an
24 answer to a question, I'm going to assume you heard me,
25 understood me and answered truthfully to the best of your
```

```
 1  this deposition here today?
 2       A    No.
 3       Q    How far did you go in school, Mr. Hicks?
 4       A    Bachelor's degree in business management in college.
 5       Q    When and where did you get that?
 6       A    Graduated in 1989 from Georgia College in
 7  Milledgeville, Georgia.
 8       Q    Did you give me your date of birth a minute ago?
 9       A    I did.
10       Q    I'm sorry.  Now, since 1989, are you married?
11       A    I am.
12       Q    Who are you married to?
13       A    Courtney.
14       Q    What was her maiden name?
15       A    Dameron.
16       Q    Is she in any way related to Dudley Horton?
17       A    No.
18       Q    Are you?
19       A    Yes.
20       Q    How are you related to Dudley Horton?
21       A    He's my uncle.
22       Q    All right.  You said you've been working in what was
23  the address in Eatonton -- I'm sorry -- for the last 30 years?
24       A    101 Industrial Boulevard.
25       Q    And what is located at 101 Industrial Boulevard in
```

```
 1  Eatonton, Georgia for the last 30 years that you've been
 2  working there?
 3       A    Horton Homes manufacturing plant.
 4       Q    Any other companies other than Horton Homes, Inc.
 5  that's located at 101 Industrial Park over the -- Industrial
 6  Boulevard over the 30 years you've worked there?
 7       A    Yes.
 8       Q    Okay.  Tell me the ones you can recall.
 9       A    Horton Homes, Dynasty Homes, Lend Mortgage
10  Corporation, RJ&J Enterprises, American Real Estate, there's a
11  multitude of them.
12       Q    Okay.  More than 30 or less than 30?
13       A    Probably less than 30.
14       Q    Between 25 and 30, maybe, is that a fair number?
15       A    Sure.
16       Q    Now, you say for the last 30 years you worked at that
17  address.  Let's talk about your employment history beginning
18  with 30 years ago.  Let me tell you what I tell folks that they
19  could do, if it's easier.  One way or the other, it doesn't
20  matter to me.  What I'm interested in is who you worked for and
21  what you did over what period of time.  And I tell folks they
22  can start with today's date and go backwards, or you can start
23  back 30 years ago.  I'm assuming your 30 years started when you
24  graduated from college; is that right?
25       A    No.  It started when I was ten years old.
```

```
 1       what you were doing because you were not fully
 2       employed at ten, I don't think.
 3              THE WITNESS:    A    Yeah.  I started out picking
 4   up trash, cutting grass.
 5              MR. HAWTHORNE:    Q    Where has your paycheck come
 6   from, what company, over the last 30 years?
 7       A    Horton Homes.
 8       Q    Inc.?
 9       A    Inc.
10       Q    You haven't been paid by any other Horton-related
11   company over the last 30 years, other than Horton Homes, Inc.;
12   right?
13       A    No.
14       Q    That's correct?
15       A    That's correct.
16       Q    Okay.  Now obviously, I guess you're going to tell me
17   you did work for Horton Homes, Inc. over that period of time.
18       A    Yes.
19       Q    All right.  What other Horton-related companies have
20   you worked for let's just say in the last 20 years, from 1998
21   through today's date?
22              MR. HALL:    20 --
23              MR. HAWTHORNE:    Q    I mean '88.  Thank you.
24       A    Horton Homes.
25       Q    Have you ever worked for any Horton-related company
```

```
 1   other than Horton Homes, Inc.?
 2        A    No.
 3        Q    Well, now, you told me a minute ago you're the
 4   president of Triangle Homes, LLC, so you work for Triangle
 5   Homes, obviously; right?
 6        A    Well, yeah, I'm the president.
 7        Q    Well, are you the president or officer of any other
 8   Horton Homes-related company, and have you ever been?
 9        A    Probably so, yes.
10        Q    Well, tell me which Horton-related companies, other
11   than Horton Homes, Inc., that you've been an officer or a
12   director of, other than Triangle. You've already told me
13   you're the president of Triangle.
14        A    Horton Iron Works, Horton Vans.
15        Q    Anything else?
16        A    No.
17        Q    Okay. What position -- strike that. Are you still
18   employed with Horton Iron Works or working for them in any way?
19        MR. PAUL:    I think he said he was an
20        officer. I don't think he said he was employed, an
21        officer.
22        MR. HAWTHORNE:    Q    What is your title at Horton
23   Iron Works?
24        A    Vice president.
25        Q    Are you still vice president today?
```

```
 1    A    Yes.
 2    Q    How long have you been VP of Horton Iron Works?
 3    A    I don't know.
 4    Q    And who owns Horton Iron Works?
 5    A    Horton Homes.
 6    Q    Okay. And who do you answer to at Horton Iron Works?
 7    A    I don't answer to anybody at Horton Iron Works.
 8    Q    You're the top man at Horton Iron Works?
 9    A    No; but I don't answer to anybody.
10    Q    Well, if a decision needs to be made regarding Horton
11  Iron Works, who would you go to for authority to make such a
12  decision?
13    A    Well, I guess if a decision needed to be made, I
14  could make it.
15    Q    All right. Well, suppose you decided you wanted to
16  close down the doors of Horton Iron Works, no longer doing
17  business as Horton Iron Works, who would you have to go to to
18  get approval to do that?
19    A    I suppose I'd have to go to my uncle, who's the --
20    Q    Dudley Horton?
21    A    -- would be -- ultimately, yeah.
22    Q    What position do you hold with Horton Vans?
23    A    Vice president.
24    Q    And who do you answer to at Horton Vans above you?
25    A    Dudley Horton.
```

```
 1      Q    Your uncle again.
 2      A    That's right.
 3      Q    And you still hold that title today as vice
 4 president?
 5      A    I do.
 6      Q    And how long have you been vice president of Horton
 7 Vans?
 8      A    I don't know.
 9      Q    More than ten years or less?
10      A    Less.
11      Q    More than five or less?
12      A    Probably more than five.
13      Q    So when you worked for Horton Vans and Horton Iron
14 Works and Triangle Homes, are there any other ones that you're
15 an officer, director of other than those three or have you ever
16 been?
17      A    Not that I can recall.
18      Q    And in your relationship with those three companies,
19 Vans, Iron Works and Triangle, you've already told me your
20 paychecks always come from Horton Homes, Inc.; right?
21      A    That's right.
22      Q    Have you ever been an officer, director, or had any
23 business relationship with H&S Homes, LLC?
24           MR. PAUL:    Let's break that down into two,
25      Mr. Hawthorne.
```

```
 1   (OFF THE RECORD AT 11:35 A.M.; RESUMED AT 11:40 A.M.)
 2            MR. HAWTHORNE:    Q     Mr. Hicks, I have a few more
 3   questions of you.  Can you tell me when Triangle Homes, LLC was
 4   first formed?
 5            MR. PAUL:    I have moved for a protective
 6       order.  It is pending --
 7            MR. HAWTHORNE:    You want to instruct him not
 8       to answer, Jimmy?  Let's speed it up.
 9            MR. PAUL:    I am going to instruct him not to
10       answer --
11            MR. HAWTHORNE:    Okay.
12            MR. PAUL:    -- on the basis of the pending
13       motion for protective order.
14            MR. HAWTHORNE:    Q    Are you going to follow your
15   lawyer's advice any time he instructs you to answer on the rest
16   of my questions so we can get through this?
17       A   Yes.
18       Q   All right.  I'm just trying to get you out of here,
19   Mr. Hicks.  Do you know what type of business Triangle Homes,
20   LLC is engaged in as the president of Triangle Homes?
21            MR. PAUL:    I instruct you not to answer based
22       on the pending motion for protective order.
23            MR. HAWTHORNE:    Q    Does Triangle Homes, LLC
24   sell Horton Mobile Homes?
25            MR. PAUL:    I instruct you not to answer based
```

```
 1        on the pending motion for protective order.
 2              MR. HAWTHORNE:    Q    You are the president of
 3   Triangle Homes.  Are there any other officers of Triangle
 4   Homes, as we sit here today?
 5              MR. PAUL:    I instruct you not to answer based
 6        on the pending motion for protective order.
 7              MR. HAWTHORNE:    Q    And do you know who formed
 8   Triangle Homes, LLC?
 9              MR. PAUL:    I instruct you not to answer based
10        on the pending motion for protective order.
11              MR. HAWTHORNE:    Q    Mr. Hicks, other than having
12   to put up with us lawyers around here, have I done anything to
13   embarrass you as we sit here today?
14        A    No.
15        Q    Have I done anything other than ask you questions as
16   we sit here today?
17        A    No.
18        Q    I haven't yelled at you or talked ugly to you or
19   annoyed you for any particular reason.  It's just been a
20   straight-up question and answer thing; is that a fair
21   statement?
22        A    I wouldn't say you haven't annoyed me, but --
23        Q    Well, you're annoyed being here; right?
24        A    Yes.
25        Q    I'm assuming that.  But other than that, I haven't
```

```
 1  been ugly to you or treated you bad, have I?
 2       A    No.
 3            MR. HAWTHORNE:    We reserve the right to
 4  resume this deposition of this witness in Montgomery
 5  -- the 30(b)(6) representative, this witness, in
 6  Montgomery.  We intend to seek costs, sanctions.  We
 7  believe the objections are not well taken in this
 8  case.  They have been taken in bad faith, and they've
 9  limited our discovery, and we intend to take it up
10  before the Court.
11            MR. PAUL:    And we -- our position is stated in
12  the pending motions, so we respectfully disagree.
13  (DEPOSITION SUSPENDED AT APPROXIMATELY 11:45 A. M.)
14
15
16
17
18
19
20
21
22
23
24
25
```