IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HORTON HOMES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:07cv506-MEF |
| | ) | (WO) |
| LARUE BANDY, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

This declaratory judgment action was filed on June 8, 2007, seeking injunctive relief prohibiting the defendants from moving forward with arbitration proceedings against the plaintiff. (Doc. # 1). On July 13, 2007, the plaintiff filed a motion for a preliminary injunction (doc. # 15) which, after an hearing, was denied. (Doc. # 46). The relevant procedural history and specific factual issues for trial are set forth in the court's Memorandum Opinion and Order on the motion for preliminary injunction.

> Horton Homes is a Georgia corporation that produces manufactured and modular homes, which it sells to a variety of retailers for resale to consumers. [Defendant] Shaner purchased a home manufactured by Horton Homes from a retailer known as H & S Homes, LLC ("H & S Homes").  In order to consummate this purchase Shaner and H & S Homes executed a Retail Installment Contract which contained a provision requiring arbitration of any claims arising out of or relating to that contract.  Horton Homes was not a party to the arbitration agreement between Shaner and H & S Homes.
>
> In August of 2006, Shaner commenced an arbitration proceeding against both Horton Homes and H & S Homes. . . . On July 6, 2007, the arbitrator entered a damage award against Horton Homes and H & S Homes in the amount of $487,500 and denied Horton Homes' motion to dismiss. . . .

> A few days after the hearing before the arbitrator was completed, Horton Homes filed suit in this Court seeking a judgment declaring that Shaner cannot pursue any arbitration against Horton Homes and that any award from any arbitration is of no effect because Horton Homes was not a proper party to the arbitration. . . .
>
> \*   \*   \*
>
> In order to succeed on the merits of this case and obtain the declaratory relief it seeks, Horton Homes must establish that it is not bound by any arbitration agreement with Shaner. It is undisputed that Horton Homes is not a signatory to the arbitration agreement between Shaner and H & S Homes, however, in certain circumstances non-signatories may be compelled to arbitrate. *See, e.g., Employers Ins. of Wausau v. Bright Metals Specialists Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Courts, however, have recognized a number of theories under which non-signatories may be bound to the arbitration of others. These theories arise out of common law principles of contract and agency law: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.") Here, Shaner argues that Horton Homes can be compelled to arbitrate because H & S Homes, which did sign the arbitration agreement, was the mere instrumentality or alter ego of Horton Homes. Put another way, Shaner contends that this is a case in which the corporate veil of H & S Homes should be pierced and the separate entities of Horton Homes and H & S Homes should be disregarded.

(Doc. # 46).

The court also determined that the applicable governing state law in this case is Georgia law. (*Id.*). "Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296, 299 (Ga. 2005).

> "'The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud, or evade contractual or tort responsibility.'"

*Id*. (punctuation omitted). *See also*, *Pazur v. Belcher*, 659 S.E.2d 804, 807 (Ga. Ct. App.

2008); *Mitcham v. Blalock*, 447 S.E.2d 83, 88 (Ga. Ct. App. 1994). In order to pierce the corporate veil under Georgia law,

> it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transactions of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.

*Pazur*, 659 S.E.2d at 808.

One way to establish "such unity of interest and ownership" is for the defendants to show a "commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." *Id.* "There must be evidence of abuse of the corporate form." *Heyde v. Xtraman, Inc.*, 404 S.E.2d 607, 610 (Ga. Ct. App. 1991).

Pending before the court is the plaintiff's motion for a protective order (doc. # 74) and supplemental motion for a protective order (doc. # 82) as well as the defendants' motion to compel production of documents (doc. # 83) and supplemental motion to compel the deposition of R.W. Hicks, Jr., the corporate representative and president of Triangle Homes (doc. # 92). The court heard oral argument on these motions on August 5, 2008.

With the pertinent principles of Georgia law in mind, and after a brief procedural history, the court will determine whether the plaintiff is entitled to the protection it seeks or whether the defendants are entitled to the discovery they seek.

On June 30, 2008, the defendants served a "Continuing Request for Production of Documents" on plaintiff Horton Homes, Inc. ("Horton Homes") in which they seek production of documents related to three non-party entities: Triangle Homes, LLC

3

("Triangle Homes"), Horton Industries, Inc. ("Horton Industries"), and Horton Ironworks, Inc. ("Horton Ironworks). *See* Doc. # 74 at 7-8, ¶ 14. On July 1, 2008, Horton Homes filed its first motion for a protective order. (Doc. # 74). In response, on July 16, 2008, the defendants filed a motion to compel. (Doc. # 83). At issue are the following requests for production of documents.

> 26. A true and correct copy of the Triangle Homes, LLC and its subsidiaries operating agreements, articles of organization, by-laws, or any other documents pertaining to the organization of Triangle Homes, LLC, and its subsidiaries.
>
> 27. True and correct copies of any and all check (sic) written by Triangle Homes, LLC, or its subsidiaries, made payable to Horton Industries.
>
> 28. True and correct copies of any and all checks written by Horton Industries and made payable to Triangle Homes, LLC, or its subsidiaries, made payable to Horton Industries.
>
> 29. True and correct copies of any and all notes executed by Triangle Homes, LLC, or its subsidiaries, in favor of Horton Industries, reflecting any and all loans from Horton Industries.
>
> 30. True and correct copies of any and all ledgers reflecting loans and payments on loans between Horton Homes and Horton Industries for the past 6 years.
>
> 31. True and correct copies of any and all ledgers reflecting loans and payments on loans between Horton Homes and Horton Ironworks, Inc.
>
> 33. True and correct copies of all documents reflecting the payment of all money or other assets for the initial capitalizations of Triangle Homes, LLC, or its subsidiaries.
>
> 34. True and correct copies of all minutes of any meetings of any governing board of Triangle Homes, LLC, or its subsidiaries.

    35.    True and correct copies of all minutes of all governing boards of Horton Industries from January 1, 2004 to present.

    36.    True and correct copies of all general ledgers of all companies related to Horton Homes, Inc. that owe Horton Homes, Inc. money or has owed Horton Homes, Inc. money at any time within the last five (5) years, such ledgers encompassing the prior five (5) physical years up to the present.

(Doc. # 81, Evidentiary Submission, Ex. A.)

On July 8, 2008, the defendants served notice of taking the deposition of the FED. R. CIV. P. 30(b)(6) corporate representative of Triangle Homes on July 22, 2008. *See* Doc. # 82 at 3, ¶ 5. On July 14, 2008, Horton Homes filed a supplemental motion for a protective order to prohibit the defendants from taking this deposition. (Doc. # 82). On July 22, 2008, the parties gathered in Macon, Georgia for the deposition of R.W. Hicks, Jr. ("Hicks"), the 30(b)(6) corporate representative and president of Triangle Homes. *See* Doc. # 90, Attach. # 1, at 2. Horton Homes objected to the deposition going forward because its motion for a protective order was pending before the court. (*Id*. at 3). Defense counsel, however, declined to adjourn the deposition and asked Hicks several pertinent questions regarding Triangle Homes before plaintiff's counsel instructed Hicks not to answer any more questions. (*Id*. at 8-9, 11-12, 15-18, & 26-27). During oral argument on August 5, 2008, the defendants orally moved to compel the completion of Hicks' deposition and later filed a supplemental motion to compel the deposition. (Doc. # 92). The defendants also seek to require the deposition to continue in Montgomery, Alabama. (*Id*.).

In its' motions for protective orders, the plaintiff argues that the actual claims and defenses in this case relate *solely* to H & S Homes and its relationship to Horton Homes.

Consequently, while the plaintiff concedes that the defendants are entitled to discovery from Horton Homes and H & S Homes, it argues that the defendants should not be permitted to obtain discovery about or from any other entities, but particularly non-parties Triangle Homes, Horton Industries, and Horton Ironworks.  Specifically the plaintiff argues that the document requests from these three entities are immaterial and irrelevant to the very narrow issue presented in this case, and are not related to any *actual* claim or defense.  During oral argument, the plaintiff also asserted that discovery should be limited temporally to the time period in which the arbitration agreements with H & S Homes were signed.[1]  The plaintiff has produced all documents related to H & S Homes and Horton Homes, but objects to the production of any documents related to Triangle Homes, Horton Industries and Horton Ironworks.  The court now addresses the discovery requests.

**A.  Discovery related to Triangle Homes and Horton Industries**.  The defendants argue that the documents they seek relate directly to their defense that the corporate veil of H & S Homes should be pierced and the separate entities of Horton Homes and H & S Homes should be disregarded.  They allege that the plaintiff is "playing a 'shell game,'" and the discovery is necessary to establish that the default judgment obtained by Horton Homes against H & S Homes is a "sham and a fraud." (Doc. # 83 at 2, ¶ 4 and 3, ¶ 7).  During oral argument, the defendants asserted that evidence about how Horton Industries treats Horton

---

[1] This limitation would restrict discovery to the time period between 1998 to 2001. Because Triangle Homes was not created until January 1, 2007, this restriction would effectively bar any discovery regarding Triangle Homes. The time limitation the plaintiff seeks to impose on the scope of discovery is not well-taken. Whether H & S Homes is an alter ego of Horton Homes, and whether other Horton entities have lost their independent corporate identities are not limited to some particular point in time.

Homes as its subsidiary is relevant to how Horton Homes treated H & S Homes. Stated another way, in order to show that H & S Homes is the alter ego or mere instrumentality of Horton Homes, the defendants seek evidence that would demonstrate that Horton Homes is the alter ego or mere instrumentality of Horton Industries; that Horton Homes and Horton Industries are interchangeable entities with such "unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Baillie*, 612 S.E.2d at 29; *Pazur*, 659 S.E.2d at 808.

      The defendants point to the role of Dudley Horton Jr. and Horton Industries in support of their position that the discovery they seek relates directly to their defense that Horton Homes and H & S Homes are no longer separate corporate entities. Dudley Horton is the owner and trustee for several family trusts that controls and hold interest in Horton Industries. (Doc. # 88, Dep. Dudley Horton, at 9-11). Horton Industries is the holding company and sole owner of Horton Homes which owned H & S Homes. (*Id.*). Horton Industries created Triangle Homes in 2007 as a holding company for three subsidiaries that sell exclusively modular homes manufactured by Horton Homes. (*Id.* at 15). Dudley Horton testified that although the manufactured housing market was in a downturn from which the market has not yet recovered, and H & S Homes was not profitable and heavily indebted to Horton Homes, Horton Industries started a new retail business with Triangle Homes because he's "an optimist." (*Id.* at 112-13). Although Dudley Horton testified that Triangle Homes "is a totally different operation from what H & S was," he conceded that H & S Homes and Triangle Homes both sold retail Horton Homes manufactured homes . (*Id*. at 15, 67 & 85).

Dudley Horton also testified in deposition that he was the chairman of the board of both H & S Homes and Horton.[2] (*Id*. at 109). The defendants argue that Horton Homes caused H & S Homes to dissolve and took a default judgment against H & S Homes knowing that Horton Industries would simply create Triangle Homes to replace H & S Homes. The defendants argue that evidence about Triangle Homes' creation and capitalization is relevant to show how Horton Industries and Horton Homes created, capitalized, managed and manipulated H & S Homes and used it as a "mere instrumentality" of Horton Homes and Horton Industries.

The defendants also point to the testimony of Hicks, Triangle Homes' president, to support its position that Triangle was created to fill the void caused by H & S Homes' dissolution. In addition, the defendants rely on Hicks' testimony regarding his employment with Horton Homes to support their alter ego/mere instrumentality defense.[3]

FED. R. CIV. P. 26(b)(1) permits the discovery of any matter which is relevant to a claim or defense. The information sought need not be admissible at trial "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The discovery that the defendants seek regarding the organization, creation, capitalization and management of Triangle Homes as related to Horton Industries as well as the actions of the governing board of Horton Industries appears reasonably

---

[2] His deposition testimony is not clear as to whether he is the chairman of the board of Horton Homes or Horton Industries or both.

[3] The court details Hicks' deposition testimony in its discussion of the motion for a protective order and motion to compel related to Hicks' deposition.

calculated to lead to admissible evidence and relevant to their defense that H & S Homes is the alter ego or mere instrumentality of Horton Homes. The defendants seek to establish that Horton Industries, Horton Homes and H & S Homes were united in interest and had no separate corporate identities by demonstrating that Horton Industries and Horton Homes created Triangle Homes as a replacement retailer for Horton Homes manufactured homes after Horton Homes allowed H & S Homes to liquidate its assets. The information sought in the requests for production of documents appears directly relevant to how Horton Homes treated H & S Homes, and reasonably calculated to lead to admissible evidence that Horton Homes, Horton Industries, and H & S Homes were united in their interests and ownerships and that they no longer had independent corporate personalities. The information sought from Triangle Homes appears relevant and reasonably calculated to lead to admissible evidence that Horton Industries may have allowed Horton Homes to treat H & S Homes as its alter ego or a mere instrumentality of Horton Homes. Consequently, the information about Triangle Homes is discoverable pursuant to FED. R. CIV. P. 26(B)(1). The plaintiff's motion for a protective order as it relates to requests for production # 26, 27, 28, 29, 30, 33, 34 and 35 will be denied. The defendants' motion to compel production of the documents in requests # 26, 27, 28, 29, 30, 33, 34 and 35 will be granted.

**B. Horton Ironworks**. To the extent that the defendants seek information regarding Horton Ironworks, the court concludes that the defendants have failed to demonstrate that the operations of Horton Ironworks are relevant to their defense that H & S Homes is the alter ego or mere instrumentality of Horton Homes. The mere fact that Horton Ironworks is a

subsidiary of Horton Homes is insufficient, as a matter of law, to allow the defendants discovery related to Horton Ironworks. *See Matson v. Noble Inv. Group, LLC*, 655 S.E.2d 275, 282 (Ga. Ct. App. 2007).

> There is no question that under appropriate circumstances a parent corporation can set up a subsidiary to promote the parent's purposes yet maintain a separate identity from the subsidiary and avoid liability for the subsidiary's actions. A parent/subsidiary relationship does not in and of itself establish the subsidiary as either the alter ego of the parent or as the parent's actual or apparent agent.[4]

*Kissun v. Humana, Inc.*, 479 S.E.2d 751, 753 (Ga. 1997).

The defendants make no argument and no reference to Horton Ironworks in their responses to the plaintiff's motions of protective orders. There is no allegation that Horton Ironworks was created as a result of H & S Homes' liquidation. In fact, Horton Ironworks was created 4 months prior to H & S Homes in 1996. Finally, Horton Ironworks is not a retailer of manufactured homes.

During oral argument, the defendants asserted that the document request to Horton Ironworks goes to "funding" and whether Ironworks's debt was included in the $22 million default judgment Horton Homes obtained against H & S Homes. According to the defendants, they want to "figure out the money trail." While the court is confident that is so, "figuring out the money trail" does not appear to be reasonably related to a claim or defense in this case and, thus, is insufficient as a matter of law to permit the financial fishing the defendants seek regarding Horton Ironworks. The court is "mindful that great caution

---

[4] The defendants do not argue that H & S Homes was an agent of Horton Homes.

should be exercised by the court in disregarding the corporate entity." *Soerries v. Dancause*, 546 S.E.2d 356, 358 (Ga. Ct. App. 2001). The defendants' argument that perhaps Horton Ironworks' debt was included in the default judgment Horton Homes obtained against H & S Homes is mere speculation on their part, and without more, the court will not permit the defendants to invade Horton Ironworks' corporate entity. The plaintiff's motion for a protective order as it relates to request for production # 31 will be granted and the defendants' motion to compel a response to request # 31 will be denied.

  **C. Ledgers of Horton Homes**. The plaintiff also seeks a protective order with respect to request for production # 36. This request asks for "all general ledgers of all companies related to Horton Homes, Inc. that owe Horton Homes, Inc. money or has owed Horton Homes, Inc. money at any time within the last five (5) years, such ledgers encompassing the prior five (5) physical years up to the present." The defendants make no argument as to why this request, as written, is related to their defense. Moreover, the request is simply too vague, over broad and non-specific to be permitted. As written, the request would require the plaintiff to provide information that is wholly unrelated to the defendants' alter ego/mere instrumentality defense. The plaintiff's motion for a protective order as it relates to request for production # 36 will be granted and the defendants' motion to compel a response to request # 36 will be denied.

  **D. Deposition of 30(b)(6) Corporate Representative Hicks**. Finally, the defendants seek to complete the deposition of Hicks as the 30(b)(6) corporate representative of Triangle Homes. During his prior, brief deposition, Hicks testified that he is the president of Triangle

Homes. (Doc. # 90, Hicks Dep. at 15). His business address, which has been the same for thirty years, is "in the same building where Horton Homes, Inc. does business." (*Id.* at 8-9). Hicks identified the address as the "Horton Homes manufacturing plant." (*Id.* at 12). Hicks testified that a "multitude" of companies are located in the same building, including Horton Homes. (*Id.*). Hicks has always been paid by Horton Homes regardless of which Horton-related company employed him. (*Id.* at 15). Although Horton Homes argues that there is no evidence to support the defendants' suggestion that Horton Homes, Horton Industries, or Triangle Homes are related, Hicks' testimony regarding his employment belies that position.

> Q: Where has your paycheck come from, which company, over the last 30 years?
> A: Horton Homes.
> Q: Inc.?
> A: Inc.
> Q: You haven't been paid by any other Horton-related company over the last 30 years, other than Horton Homes, Inc., right?
> A: No.
> Q: That's correct?
> A: That's correct.
> Q: Okay. Now obviously, I guess you're going to tell me you did work for Horton Homes, Inc. over that period of time.
> A: Yes.
> Q: All right. What other Horton-related companies have you worked for let's say in the last 20 years, from 1998 through today's date?
> MR. HALL: 20 –
> MR. HAWTHORNE: I mean '88. Thank you.
> A: Horton Homes.
> Q: Have you ever worked for any Horton-related company other than Horton Homes, Inc.
> A: No.
> Q: Well, now, you told me a minute ago you're the president of Triangle Homes, LLC, as you work for Triangle Homes, obviously; right?
> A: Well, yeah, I'm the president.

(*Id.* at 15-18).

Hicks' testimony regarding the operation, nature and manner of the relationship between Horton Homes and Triangle Homes appears relevant within the meaning of FED. R. CIV. P. 26(b)(1) as this testimony relates to the defendants' alter ego/mere instrumentality defense. The plaintiff's motion for a protective order to prohibit Hicks from being deposed will be denied and the defendants' motion for to compel the deposition of Hicks will be granted. The defendants have already traveled to Georgia to depose Hicks whose deposition was truncated by the plaintiff's lawyers. The defendants now request that Hicks be required to appear in Montgomery, Alabama for his deposition. This request will be granted.

Accordingly, upon consideration of the motions, for the reasons as stated, and for good cause, it is

ORDERED as follows:

1.  That the plaintiff's motion for a protective order (doc. # 74) as it relates to requests for production # 26, 27, 28, 29, 30, 33, 34 and 35 be and is hereby DENIED. The defendants' motion to compel (doc. # 83) as it relates to requests for production # 26, 27, 28, 29, 30, 33, 34 and 35 be and is hereby GRANTED. The defendants shall produce the requested material on or before **August 25, 2008.**

2.  That the plaintiff's motion for a protective order as it relates to requests for production # 31 and 36 be and is hereby GRANTED and the defendants' motion to compel responses to requests for production # 31 and 36 be and is hereby DENIED.

3.   That the plaintiff's motion for a protective order (doc. # 82) as it relates to the deposition of Hicks be and is hereby DENIED and the defendants' motion for to compel (doc. # 92) as it relates to the deposition of Hicks be and is hereby GRANTED. R.W. Hicks, Jr. shall appear for deposition in Montgomery, Alabama, at a place designated by the defendants no later than **August 29, 2008**.

Done this 14th day of August, 2008.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE