UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HORTON HOMES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LARUE BANDY, MARIE BANDY, )<br>PATRICK PRITCHETT, WILLIAM )<br>SHANER, ELSIE FONDREN )<br>AVERETTE, WILLIAM CRUTHIRDS, )<br>SHERRIE CRUTHIRDS, LARRY C. )<br>McCULLOUGH, and ROBERT )<br>JEROME TEAL, III, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.<br>2:07-CV-506-MEF |

**PLAINTIFF HORTON HOMES, INC.'S MOTION (i) IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ALTER EGO AFTER JULY 10, 2001, OR (ii) IN THE ALTERNATIVE, FOR A RULING PURSUANT TO FED. R. EVID. 104(a) ON THE TIME PERIOD OF EVIDENCE THAT CAN BE ADMITTED WITH RESPECT TO DEFENDANTS' ALTER EGO DEFENSE**

COMES NOW Plaintiff Horton Homes, Inc. ("Plaintiff Horton") and files its "Motion (i) in Limine to Exclude Evidence Related to Alter Ego After July 10, 2001, or (ii) in the Alternative, for a Ruling Pursuant to Fed. R. Evid. 104(a) on the Time Period of Evidence That Can Be Admitted with Respect to Defendants' Alter Ego Defense" ("Plaintiff Horton's Motion in Limine") and states as follows:

1.

Defendants are attempting to force Plaintiff Horton into arbitrations based on arbitration agreements that were signed only by Defendants and by H&S Homes, LLC ("H&S Homes") during the period from June 15, 1998 through July 10, 2001.  Because Defendants admit that Plaintiff Horton is not a party to these arbitration agreements, Defendants allege that Plaintiff Horton is subject to them because H&S Homes was the alter ego of Plaintiff Horton when H&S Homes executed the arbitration agreements.  Therefore, the sole issue for determination in this action is whether Defendants can compel Plaintiff Horton to arbitrate pursuant to arbitration agreements executed only by H&S Homes.

2.

Based on the applicable law of alter ego, the relevant time period for determination of an alter ego claim is at the time of the transaction for which alter ego liability is sought.  Therefore, because Defendants seek to make Plaintiff Horton liable for arbitration agreements executed by H&S Homes during the period up through July 10, 2001, that is the only relevant time period for evidence on alter ego in this action.

3.

Plaintiff Horton files this Motion to preclude introduction of evidence on alter ego that relates to the period after July 10, 2001, because that evidence is

irrelevant. As explained below and more fully in the accompanying Brief[1] filed herewith, this Court has the authority to grant this Motion pursuant to Fed. R. Evid. 104(a) and should grant this Motion to further the policies of Fed. R. Civ. P. 16(c), which promote the efficient, streamlined presentation of relevant evidence at trial.

4.

Plaintiff Horton and H&S Homes are separate entities created at different times to serve different purposes. Since its creation in 1970, Plaintiff Horton has built manufactured homes for sale to a network of more than 200 retail dealers; Plaintiff Horton has never sold manufactured homes directly to the public.[2] H&S Homes is a separate entity that was created in 1996 for the sole purpose of buying manufactured houses and selling them at retail sales lots.

5.

During its entire existence, H&S Homes has had separate assets, employees, and liabilities from Plaintiff Horton. Accordingly, H&S Homes and Plaintiff Horton have always maintained separate financial books and records, which are audited annually by independent accountants who verify their accuracy. Plaintiff Horton and H&S Homes have never commingled any assets or liabilities.[3]

---

[1] Plaintiff Horton hereby incorporates its accompanying supporting Brief, filed herewith.
[2] *See* Transcript of Preliminary Injunction Hearing conducted by this Court on November 20, 2007 ("T. November 20, 2007 Hearing"), testimony of Michael Willard, pp. 156-160.
[3] T., November 20, 2007 Hearing, proffered testimony of Mike Thigpen, C.P.A., pp. 183-194.

6.

H&S Homes bought homes from Plaintiff Horton on the same terms and prices as the more than 200 other dealers in Plaintiff Horton's dealer network. H&S Homes took title to those homes, assumed the risk of loss for those homes, and sold these homes using its own lots using its own sales staff.[4]

7.

During the period from June 15, 1998 through July 10, 2001, Defendants[5] each purchased a manufactured home (the "Subject Manufactured Homes") from an H&S Homes sales lot located in Alabama.[6]  Plaintiff Horton manufactured the Subject Manufactured Homes and sold them to H&S Homes at wholesale. Plaintiff Horton did not sell the Subject Homes to Defendants and was not a party to the purchase transactions, which were effected pursuant to sales contracts (the "Sales Contracts") entered into only by Defendants and H&S Homes.  The Sales Contracts included arbitration agreements (the "Arbitration Agreements")[7] requiring arbitration of all claims related to the Subject Manufactured Homes.

---

[4] T., November 20, 2007 Hearing, testimony of Michael Willard, pp. 156-163.

[5] The Defendants' purchase dates are stated in their Arbitration Demands, copies of which are attached to the Complaint [Doc. No. 1] as Exhibits "F" -"N", and to Plaintiff Horton Homes, Inc.'s Third Supplemental, Amended Complaint [Doc. No. 64] (the "Third Supplemental, Amended Complaint") as Exhibits "A" and "B".

[6] Unlike the other Defendants, Defendant Shaner did not actually purchase a manufactured home from H&S Homes.  Instead, Defendant William Shaner lived in a manufactured home that his mother, Cliffie Shaner, bought for him from H&S Homes.

[7] The Arbitration Agreements are attached to the Complaint as Exhibits "A"-"E", and to Third Supplemental, Amended Complaint as Exhibits "A" and "B".

8.

Defendants have each asserted claims based on alleged misrepresentations made when they purchased the Subject Manufactured Homes from H&S Homes during the period from June 15, 1998 until July 10, 2001. Defendants admit that their claims are covered by the Arbitration Agreements and have attempted to assert their claims against H&S Homes in arbitrations filed pursuant to the Arbitration Agreements. (Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction [Doc. No. 22], p. 2.)   Because Defendants admit that Plaintiff Horton is not a party to the Arbitration Agreements, they argue that Plaintiff Horton is subject to the Arbitration Agreements as the alter ego of Plaintiff Horton. (Answer [Doc. No. 9], p. 2; Amended Answer [Doc. No. 21], 1 (adopting previously asserted defenses).)

9.

This Court has authority to rule on preliminary evidentiary issues such as the issues presented by Plaintiff Horton's Motion.   *See* Fed. R. Evid. 104(a) ("[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court").

10.

The Federal Rules of Civil Procedure enable the Court to exercise this authority in a manner that streamlines the trial by eliminating the time, expense,

prejudice and jury confusion resulting from preparing and presenting irrelevant evidence. Fed. R. Civ. P. 16(c)(2)(C), (D). *See also* Fed. R. Civ. P. 16(e); *Manual for Complex Litigation (Fourth)* § 11.64 (2004).

11.

The relief requested in Plaintiff Horton's Motion in Limine will further these purposes. Granting the Motion will streamline the trial by eliminating evidentiary fights over the proper temporal scope of admissible evidence on the Defendants' alter ego defense, as well as limiting the evidence to the relevant time period. It will also eliminate time and expense by allowing the parties to prepare for and anticipate evidence only within the relevant time period. Finally, it will avoid the prejudice and jury confusion resulting from opening statements addressing irrelevant, prejudicial evidence, and from the evidentiary fights which will inevitably taint the jury.

12.

Both Alabama and Georgia agree that alter ego is determined ***at the time of the underlying transaction for which alter ego liability is being sought***.

13.

Under Alabama law, the Alabama Supreme Court has applied New York's formulation of the alter ego doctrine. In *First Health, Inc. v. Blanton*, 585 So.2d

1331 (Ala. 1991), it stated the following three requirements for alter ego liability by quoting a New York decision:

(1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that **at the time of the attacked transaction** the subservient corporation had no separate mind, will, or existence of its own;

(2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;

(3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*First Health, Inc.*, 585 So.2d at 1334-1335 (quoting *Lowendahl v. Baltimore & Ohio Ry.*, 247 A.D. 144, 287 N.Y.S. 62 (1936)) (emphasis added). *See also Austin v. Abdallah*, No. 3:07-cv-0042-MEF, 2008 WL 898850, at *4-*5 (M.D. Ala. March 31, 2008) (quoting *First Health, Inc.*, 585 So.2d at 1334-35) (Fuller, J.).

14.

Georgia Courts have also looked to New York law on alter ego. *See Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (1997); *Najran Co. for Gen. Contracting & Trading v. Fleetwood Enterprises, Inc.*, 659 F. Supp. 1081, 1097-98 (S.D. Ga. 1986). As in Alabama, Georgia Courts find that the relevant time period for consideration of an alter ego claim is the time of the challenged transaction. *See Amason v. Whitehead*, 186 Ga. App. 320, 322 (1988) (considering evidence "at the

time of transaction"); *Condenser Serv. & Eng'g Co., Inc. v. Brunswick Port Auth.*, 87 Ga. App. 469, 474 (1953) (considering evidence "at anytime during the dealings between the parties").

15.

The rationale for limiting the temporal scope of alter ego analysis to the time of the underlying transaction is compelling where alter ego is alleged as the basis for imposing contract obligations on a non-signatory. In Georgia, as in most states, a binding contract requires coincidence of capacity, consent, and consideration ***at a point in time***. *See, e.g.*, O.C.G.A. § 13-3-1 (requirements for validity of contract); O.C.G.A. § 13-3-20(a) (party must have reached age of majority to enter into contract); O.C.G.A. § 13-3-24(a) (party must be competent at time of contract); O.C.G.A. § 13-3-25 (addressing effect of intoxication). Similarly, in the analogous context of agency, an agent must have proper authority to enter into of the contract in order to bind a principal. *See, e.g.*, *Jennette v. Nat'l Cmty. Dev. Servs., Inc.*, 239 Ga. App. 221, 223 (1999); *Westcorp Software Sys., Inc. v. Odell*, 238 Ga. App. 835, 835 (1999).

16.

Because the claim of alter ego is asserted in this case for the purpose of binding Plaintiff Horton to arbitration agreements it did not sign, the facts related to alter ego must be determined ***as of the time*** the contracts were signed.

17.

It is of great importance that the parties obtain a ruling on this Motion before trial. If the Court defers ruling on this matter until time of trial, the parties' disagreement about the relevant time period will start with the voir dire questions. The disagreement will be crystallized in opening statement. If Defendants' counsel is permitted to discuss an irrelevant time period in their opening statement, Plaintiff Horton would have suffered prejudice that cannot be overcome by subsequent exclusion of evidence and cautionary instructions. If Defendants' counsel is permitted to propound questions pertaining to facts and events outside the relevant time period, Plaintiff Horton's objections, even if sustained, will not be sufficient to overcome the prejudice.

18.

In addition, the Court's ruling on the relevant time period will control the way this case is tried by both Plaintiff and Defendants. The parties, the Court, and the interests of justice are best served by obtaining a ruling regarding the relevant time period so the parties may prepare for trial with an understanding of the time period for which evidence will be admitted.

WHEREFORE, for the reasons stated above and in the supporting Brief filed herewith, the Court should:

1. Grant Plaintiff Horton's Motion in Limine and order that Defendants cannot present evidence, propound questions, or mention in voir dire or opening statement, events, acts, or occurrences after July 10, 2001; or, alternatively

2. The Court should make a preliminary evidentiary ruling under Fed. R. Evid. 104(a) establishing the relevant time period respecting which evidence will be admitted regarding Defendants' alter ego contentions.

Dated this 14th day of August, 2008.

By: */s/ Jimmy L. Paul*
JIMMY L. PAUL
*Georgia Bar No. 567600*
THOMAS C. GRANT
*Georgia Bar No. 297455*
(Admitted Pro Hac Vice)

*Counsel for Plaintiff Horton, Inc.*

Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (Facsimile)
james.paul@chamberlainlaw.com

Sydney F. Frazier, Jr.
SJIS #FRA007
Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP
2001 Park Place North, Suite 700
Birmingham, Alabama  35203
(205) 716-5291
(205) 716-5389 (Facsimile)
sff@cabaniss.com
*Co-Counsel for Plaintiff Horton, Inc.*

# **CERTIFICATE OF SERVICE**

This is to certify that on this date the undersigned has filed using the CM/ECF system a true and correct copy of "Motion (i) in Limine to Exclude Evidence Related to Alter Ego After July 10, 2001, or (ii) in the Alternative, for a Ruling Pursuant to Fed. R. Evid. 104(a) on the Time Period of Evidence That Can Be Admitted with Respect to Defendants' Alter Ego Defense" on the following parties and has served the following via the CM/ECF system:

Michael S. Harper
213 Barnett Boulevard
P.O. Box 780608
Tallassee, Alabama  36078

Frank H. Hawthorne, Jr.
Randy A. Myers
Hawthorne & Myers LLC
322 Alabama Street
Montgomery, Alabama  36104

Dated this 14th day of August, 2008.

By:  _____/s/ Jimmy L. Paul_____
    JIMMY L. PAUL
    *Georgia Bar No. 567600*
    THOMAS C. GRANT
    *Georgia Bar No. 297455*
    (Admitted Pro Hac Vice)

*Counsel for Plaintiff Horton, Inc.*

Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (Facsimile)
james.paul@chamberlainlaw.com
287055.1
730302-000067:8/14/2008