UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HORTON HOMES, INC.,

Plaintiff,

v.

LARUE BANDY, MARIE BANDY, PATRICK PRITCHETT, WILLIAM SHANER, ELSIE FONDREN AVERETTE, WILLIAM CRUTHIRDS, SHERRIE CRUTHIRDS, LARRY C. McCULLOUGH, and ROBERT JEROME TEAL, III,

Defendants.

CIVIL ACTION NO. 2:07-CV-506-MEF

**PLAINTIFF HORTON HOMES, INC.'S BRIEF IN SUPPORT OF "MOTION (i) IN LIMINE TO EXCLUDE EVIDENCE RELATED TO ALTER EGO AFTER JULY 10, 2001, OR (ii) IN THE ALTERNATIVE, FOR A RULING PURSUANT TO FED. R. EVID. 104(a) ON THE TIME PERIOD OF EVIDENCE THAT CAN BE ADMITTED WITH RESPECT TO DEFENDANTS' ALTER EGO DEFENSE"**

COMES NOW Plaintiff Horton Homes, Inc. ("Plaintiff Horton") and files this Brief in support of its "Motion (i) in Limine to Exclude Evidence Related to Alter Ego After July 10, 2001, or (ii) in the Alternative, for a Ruling Pursuant to Fed. R. Evid. 104(a) on the Time Period of Evidence That Can Be Admitted with Respect to Defendants' Alter Ego Defense" ("Plaintiff Horton's Motion in Limine") and states as follows:

## I. INTRODUCTION.

This action concerns Defendants' attempts to force Plaintiff Horton to arbitrate pursuant to arbitration agreements signed only by Defendants and H&S Homes, LLC ("H&S Homes"). Because Defendants admit that Plaintiff Horton is not a party to these arbitration agreements, Defendants are forced to argue that Plaintiff Horton is subject to the arbitration agreements because H&S Homes was the alter ego of Plaintiff Horton ***at the time*** H&S Homes executed the agreements. The evidence is clear that Defendants and H&S Homes both signed the arbitration agreements when Defendants purchased manufactured homes from H&S Homes, which purchases occurred during the period from June 15, 1998 through July 10, 2001. However, Defendants are attempting to bind Plaintiff Horton to the sale and arbitration agreements executed only by H&S Homes during that time.

Based on applicable law, the relevant time for determining alter ego ***is at the time of the transaction*** for which alter ego liability is being sought. Thus, the relevant time period for determining Defendants' alter ego defense ends on July 10, 2001, when the last of the Defendants signed an arbitration agreement with H&S Homes. Therefore, the Court should grant Plaintiff Horton's Motion in Limine and rule that Defendants cannot tender evidence pertaining to facts or events occurring after July 10, 2001 to support their alter ego defense. Alternatively, the Court should grant Plaintiff Horton's Motion for a preliminary

evidentiary ruling under Fed. R. Evid. 104(a) that the relevant time period for consideration and proof of Defendants' alter ego defense ends on July 10, 2001.

## II. STATEMENT OF FACTS.

Plaintiff Horton and H&S Homes are separate entities created at different times to serve different purposes. N. Dudley Horton, Jr., created Plaintiff Horton in 1970. In the following 37 years, Plaintiff Horton has built manufactured homes at its plant in Eatonton, Georgia. Plaintiff Horton has always manufactured homes for sale to a network of more than 200 retail dealers located throughout the Southeast; these retail dealers sell the homes to consumers at their sales lots. Plaintiff Horton has never sold manufactured homes directly to the public.[1]

Although H&S Homes is a separate, wholly owned subsidiary of Plaintiff Horton, it began operations in 1996 as a joint venture entity named American Manufactured Homes, LLC ("American Homes"). Plaintiff Horton owned sixty percent (60%) of American Homes and the Douglases owned forty percent (40%). During 1997, the Douglases withdrew from American Homes. Plaintiff Horton acquired their 40% interest and changed the company name to H&S Homes, LLC.[2]

During its entire existence, H&S Homes has had separate assets, employees, and liabilities from Plaintiff Horton. Accordingly, H&S Homes and Plaintiff

[1] *See* Transcript of Preliminary Injunction Hearing conducted by this Court on November 20, 2007 ("T. November 20, 2007 Hearing"), testimony of Michael Willard, pp. 156-160.

[2] T., November 20, 2007 Hearing, testimony of Russ Hicks, p. 93.

Horton have always maintained separate financial books and records, which are audited annually by independent accountants who verify their accuracy. Plaintiff Horton and H&S Homes have never commingled any assets or liabilities and have instead always owned assets separately and owed liabilities individually.[3]

When H&S Homes bought manufactured homes from Plaintiff Horton, H&S Homes bought them on the same terms and prices as the more than 200 other dealers in Plaintiff Horton's dealer network. Similarly, when H&S Homes purchased homes manufactured by Plaintiff Horton, H&S Homes took title to the homes and assumed the risk of loss for those homes. In addition, H&S Homes was solely responsible for selling the homes, which it did on its own lots using its own sales staff. Plaintiff Horton did not sell manufactured homes to customers of H&S Homes and was not involved in or a party to the sale of homes by H&S Homes to retail customers.[4]

Defendants are Alabama residents who each purchased a manufactured home (the "Subject Manufactured Homes") from an H&S Homes sales lot located in Alabama.[5] Plaintiff Horton manufactured the Subject Manufactured Homes and

---

[3] T., November 20, 2007 Hearing, proffered testimony of Mike Thigpen, C.P.A., pp. 183-194.

[4] T., November 20, 2007 Hearing, testimony of Michael Willard, pp. 156-163.

[5] Unlike the other Defendants, Defendant Shaner did not actually purchase a manufactured home from H&S Homes. Instead, Defendant William Shaner lived in a manufactured home that his mother, Cliffie Shaner, bought for him from H&S Homes.

sold them to H&S Homes at wholesale; H&S Homes took title to the homes and sold them at retail to Defendants.

Defendants purchased the Subject Manufactured Homes during the period from June 15, 1998 until July 10, 2001.[6] Because Plaintiff Horton did not sell the Subject Homes to Defendants, it was not a party to the purchase transactions, which were effected pursuant to sales contracts (the "Sales Contracts") entered into only by Defendants and H&S Homes. The Sales Contracts included arbitration agreements (the "Arbitration Agreements")[7] requiring arbitration of all claims related to the Subject Manufactured Homes. Because Plaintiff Horton is not a party to the Sales Contracts, it is likewise not a party to Arbitration Agreements.

Defendants have each asserted claims based on alleged misrepresentations made when they purchased the Subject Manufactured Homes from H&S Homes. These claims involve alleged misrepresentations about furniture and rebates which Defendants claim they should have received. The Defendants' purchases occurred during the period from June 15, 1998 until July 10, 2001. Because Defendants admit that their claims are covered by the Arbitration Agreements, they have each attempted to assert their claims against H&S Homes in arbitrations filed pursuant

[6] The Defendants' purchase dates are stated in their Arbitration Demands, copies of which are attached to the Complaint [Doc. No. 1] as Exhibits "F" -"N", and to Plaintiff Horton Homes, Inc.'s Third Supplemental, Amended Complaint [Doc. No. 64] (the "Third Supplemental, Amended Complaint") as Exhibits "A" and "B".

[7] The Arbitration Agreements are attached to the Complaint as Exhibits "A"-"E", and to Third Supplemental, Amended Complaint as Exhibits "A" and "B".

to the Arbitration Agreements. (Defendants' Brief in Opposition to Plaintiff's Motion for Preliminary Injunction [Doc. No. 22], p. 2.) Because Defendants admit that Plaintiff Horton is not a party to the Arbitration Agreements, Defendants are attempting to subject Plaintiff Horton to the Arbitration Agreements by making an alter ego defense. Specifically, Defendants allege that "H&S Homes, LLC is the alter ego of Horton Homes, Inc., or acts as the mere instrumentality of Horton Homes, Inc. and therefore Horton Homes, Inc. is a party to the Arbitration Agreements". (Answer [Doc. No. 9], p. 2; Amended Answer [Doc. No. 21], 1 (adopting previously asserted defenses).)

## III. <u>ARGUMENT AND CITATION OF AUTHORITIES</u>.

### A. <u>The Court Should Make a Pretrial Ruling on the Temporal Scope of Evidence That May Be Admitted with Respect to the Defendants' Alter Ego Defense</u>.

The Court should exercise its authority to make preliminary evidentiary rulings in order to limit the evidence presented at trial to the relevant time period for the alter ego defense raised in this case. The Federal Rules of Evidence give this Court the authority to rule on preliminary evidentiary issues such as the issues presented by Plaintiff Horton's Motion. Specifically, Fed. R. Evid. 104(a) states that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court".

The Federal Rules of Civil Procedure enable the Court to exercise this authority in a manner that streamlines the trial by eliminating the time, expense, prejudice and jury confusion resulting from preparing and presenting irrelevant evidence. For instance, Fed. R. Civ. P. 16(c)(2) states that:

> [a]t any pretrial conference, the court may consider and take appropriate action on the following matters: . . .
>
> (C) obtaining admissions and stipulations about facts and documents ***to avoid unnecessary proof, and ruling in advance on the admissibility of evidence;*** [and]
>
> (D) ***avoiding unnecessary proof and cumulative evidence,*** and limiting the use of testimony under Federal Rule of Evidence 702.

Fed. R. Civ. P. 16(c)(2) (emphasis added). Also, Fed. R. Civ. P. 16(e) states that "[t]he court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence". *See also Manual for Complex Litigation (Fourth)* § 11.64 (2004) (court's trial plan "should eliminate, to the extent possible, irrelevant, immaterial, cumulative, and redundant evidence, and should further the clear and efficient presentation of evidence").

The relief requested in Plaintiff Horton's Motion in Limine will further these purposes. Granting the Motion will streamline the trial by eliminating evidentiary fights over the proper temporal scope of admissible evidence on the Defendants' alter ego defense, as well as limiting the evidence to the relevant time period. It will also eliminate time and expense by allowing the parties to prepare for and

anticipate evidence only within the relevant time period. Finally, it will avoid the prejudice and jury confusion resulting from opening statements addressing irrelevant, prejudicial evidence, and from the evidentiary fights which will inevitably taint the jury.

### B. The Relevant Time Period for Defendants' Alter Ego Defense Ends on July 10, 2001, the Execution Date of the Most Recent Purchase Contract Containing an Arbitration Agreement.

#### 1. The Defendants' Alter Ego Defense Relates Entirely to Seven Sales Contracts Executed Between June 15, 1998 and July 10, 2001.

As explained above in Section II, Defendants' claims against H&S Homes all relate to alleged misrepresentations that occurred ***up through the date*** that each of Defendants executed their contracts to purchase one of the Subject Manufactured Homes. These purchases all occurred during the period from June 15, 1998 through July 10, 2001. Defendants are asserting these claims against H&S Homes in arbitrations filed pursuant to the Arbitration Agreements that they signed on the dates of purchase. Because it is undisputed that Plaintiff Horton is not a party to the Arbitration Agreements, Defendants argue that Plaintiff Horton is bound by the Arbitration Agreements solely because H&S Homes is the alleged alter ego of Plaintiff Horton. Therefore, the sole issue in this action is whether H&S Homes was the alter ego of Plaintiff Horton ***at the time*** H&S Homes entered into the Arbitration Agreements on the dates of purchase.

2. <u>The Relevant Time Period for Determining Alter Ego Status Is the Date of the Underlying Transaction</u>.

Both Alabama and Georgia agree that alter ego is determined ***at the time of the underlying transaction for which alter ego liability is being sought***.

Under Alabama law, the Alabama Supreme Court has applied New York's formulation of the alter ego doctrine. In *First Health, Inc. v. Blanton*, 585 So.2d 1331 (Ala. 1991), it stated the following three requirements for alter ego liability by quoting a New York decision:

> (1) The dominant party must have complete control and domination of the subservient corporation's finances, policy and business practices so that ***at the time of the attacked transaction*** the subservient corporation had no separate mind, will, or existence of its own;
>
> (2) The control must have been misused by the dominant party. Although fraud or the violation of a statutory or other positive legal duty is misuse of control, when it is necessary to prevent injustice or inequitable circumstances, misuse of control will be presumed;
>
> (3) The misuse of this control must proximately cause the harm or unjust loss complained of.

*First Health, Inc.*, 585 So.2d at 1334 -1335 (quoting *Lowendahl v. Baltimore & Ohio Ry.*, 247 A.D. 144, 287 N.Y.S. 62 (1936)) (emphasis added). This Court has recently cited *First Health, Inc.* as a source for the elements of alter ego under Alabama law. *See Austin v. Abdallah*, No. 3:07-cv-0042-MEF, 2008 WL 898850,

at *4-*5 (M.D. Ala. March 31, 2008) (quoting *First Health, Inc.*, 585 So.2d at 1334-35) (Fuller, J.).

Georgia Courts have also looked to New York law on alter ego and have also held that alter ego is determined at the time of the underlying transaction for which alter ego liability is being sought. For example, in *Najran Co. for General Contracting & Trading v. Fleetwood Enterprises, Inc.*, 659 F. Supp. 1081, 1097-98 (S.D. Ga. 1986), the Southern District of Georgia cited and relied on the alter ego analysis under New York law in *Farkar Co. v. Hanson DISC, Ltd.*, 583 F.2d 68 (2d Cir.), *modified in other respects*, 604 F.2d 1 (1979).[8]

More recently, in *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (1997), the Georgia Supreme Court approvingly cited the court's discussion of the proper "tests" used "for piercing the corporate veil" in *Fidenas AG v. Honeywell, Inc.*, 501 F. Supp. 1029, 1037 (S.D.N.Y. 1980). Specifically, the Georgia Supreme Court relied upon the *Fidenas AG* Court's holding that the "tests for finding ***agency*** so as to hold parent corporation liable for obligations of its subsidiary are virtually the same as those for ***piercing the corporate veil***". *Fidenas AG*, 501 F. Supp. at 1037 (emphasis added).

---

[8] Although the *Farkar Co.* Court found that a wholly owned subsidiary sales company was the alter ego of its parent company, that holding was based on the fact that the subsidiary was truly just a "paper company" which literally had no employees, no inventory, and no office of its own. *Farkar Co.*, 583 F.2d at 70, 71 n.1. In contrast, H&S Homes had its own employees who worked at its own sales lots and sold manufactured homes which H&S Homes had purchased from Plaintiff Horton.

Similarly, Georgia Courts find that the relevant time period for consideration of an alter ego claim is the time of the challenged transaction. For instance, in *Amason v. Whitehead*, 186 Ga. App. 320 (1988), the Georgia Court of Appeals reversed a trial court's denial of a motion for judgment notwithstanding a jury verdict of alter ego because: "There is no evidence of fraud, no abuse of the corporate form, no comingling of assets and not even a showing of corporate insolvency ***at the time of transaction***, but only that at the time of trial the corporation had no assets". 186 Ga. App. 322 (emphasis supplied).

In *Condenser Service. & Engineering Co., Inc. v. Brunswick Port Authority*, 87 Ga. App. 469, 474 (1953), the Georgia Court of Appeals held that a count of the plaintiff's complaint did not sufficiently allege a claim for alter ego even though the complaint alleged the subsidiary was wholly owned by the parent, had overlapping officers with the parent and was controlled by the parent, carried on no business of its own, and was an instrumentality and alter ego of the defendant in the conduct of business generally: "There are no allegations of fraud or misconduct on the part of either the [parent] or [the subsidiary]. It is not alleged there was an ulterior motive existing, or that there was bad faith ***at anytime during the dealings between the parties***." (emphasis supplied).

3. Alter Ego Necessarily Must Be Determined at the Time of Execution of the Challenged Contract.

The rationale for applying the general rule discussed in Section II.B.2. is compelling where alter ego is alleged as the basis for imposing contract obligations on a non-signatory.

In Georgia, as in most states, a binding contract requires coincidence of capacity, consent, and consideration ***at a point in time***. O.C.G.A. § 13-3-1.[9] A contract obligation opposed on grounds that the signatory was a minor when the contract was signed, and opposes the contract obligations on reaching majority, is obviously a defense embedded in time. O.C.G.A. § 13-3-20 (a).[10] A defense that a signatory was mentally incompetent at the time the contract was signed, and that the contract was not ratified by the signatory during a lucid interval, is embedded in time. O.C.G.A. §13-3-24(a).[11] A defense that a signatory was intoxicated at the time the contract was executed and has not subsequently ratified the contract by

[9] O.C.G.A. § 13-3-1 provides: "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate".

[10] O.C.G.A. § 13-3-20 (a) provides: "Generally the contract of a minor is voidable. If in a contractual transaction a minor receives property or other valuable consideration and, after arrival at the age of 19, retains possession of such property or continues to enjoy the benefit of such other valuable consideration, the minor shall have thereby ratified or affirmed the contract and it shall be binding on him or her…".

[11] O.C.G.A § 13-3-24(a) provides: "The contract of an insane, a mentally ill, a mentally retarded, or a mentally incompetent person who has never been adjudicated to be insane, mentally ill, mentally retarded, or mentally incompetent to the extent that he is incapable of managing his estate as prescribed by this Code is not absolutely void but only voidable, except that a contract made by such person during a lucid interval is valid without ratification".

words or conduct, is embedded in time. O.C.G.A. § 13-3-25.[12] A defense that the person signing the contract lacked the requisite authority at the time of the execution of a contract not subsequently ratified is embedded in time. *Jennette v. Nat'l Cmty Dev. Servs., Inc.*, 239 Ga. App. 221, 223 (1999). A defense that the person signing a contract on behalf of another is not an agent with power to bind, by either express or apparent authority is a defense embedded in time. *Id.*; *Westcorp Software Sys., Inc. v. Odell*, 238 Ga. App. 835, 835 (1999).

Like all of the above defenses, a contention that a non-signatory to a contract is bound under principles of alter ego is embedded in time. The facts sufficient to sustain a claim that a non-signatory is bound by a contract executed by an alleged alter ego must necessarily exist ***at the time*** the alleged alter ego executed the contract sought to be imposed on the non-signatory. If these facts sufficient to sustain a contention of alter ego do not exist at the time the alleged alter ego executes the contract, the statutory element of "assent of the [party]" does not exist; thus, no contract exists with the non-signatory under O.C.G.A. § 13-3-1.

Because the claim of alter ego is asserted in this case for the purpose of binding Plaintiff Horton to an arbitration agreement it did not sign, the facts related to alter ego must be determined ***as of the time*** the contract was signed, even if

[12] O.C.G.A. § 13-3-25 provides: A contract made by an intoxicated person is not void, though the intoxication is brought about by the other party, but is merely voidable at the election of the intoxicated person and may be ratified by him expressly or by conduct inconsistent with its rescission.

questions of alter ego could be decided in relation to a broader based timeline, in other contexts.

### C. <u>Plaintiff Horton Will Be Seriously Prejudiced If the Court Defers Ruling on this Evidentiary Issue until Time of Trial</u>.

Plaintiff Horton submits this Motion does not present a matter that should be deferred until evidence is tendered at trial. The time period for admissible evidence can be determined in advance of trial, as a matter of law.

If the Court defers ruling on this matter until time of trial, the parties' disagreement about the relevant time period will start with the voir dire questions. The disagreement will be crystallized in opening statement. If Defendants' Counsel is permitted to discuss an irrelevant time period in their opening statement, Plaintiff Horton would have suffered prejudice that cannot be overcome by subsequent exclusion of evidence and cautionary instructions. If Defendants' Counsel is permitted to propound questions pertaining to facts and events outside the relevant time period, Plaintiff Horton's objections, even if sustained, will not be sufficient to overcome the prejudice.

In addition, the Court's ruling on the relevant time period will control the way this case is tried by both Plaintiff and Defendants. The parties, the Court, and the interests of justice are best served by obtaining a ruling regarding the relevant time period so the parties may prepare for trial with an understanding of the time period for which evidence will be admitted.

## IV. CONCLUSION.

For the reasons set forth above, Plaintiff Horton submits the Court should grant Plaintiff Horton's Motion in Limine and order that Defendants cannot present evidence, propound questions, or mention in voir dire, or opening statement, events, acts, or occurrences after July 10, 2001. Alternatively, Plaintiff Horton submits the Court should make a preliminary evidentiary ruling under Fed. R. Evid. 104(a) establishing the relevant time period respecting which evidence will be admitted regarding Defendants' alter ego contentions. For the reasons set forth herein, Plaintiff Horton submits the relevant time period ends on July 10, 2001, the date of the most recent Arbitration Agreement.

Dated this 14th day of August, 2008.

By: *<u>/s/ Jimmy L. Paul</u>*
JIMMY L. PAUL
*Georgia Bar No. 567600*
THOMAS C. GRANT
*Georgia Bar No. 297455*
(Admitted Pro Hac Vice)

*Counsel for Plaintiff Horton, Inc.*

Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 (Facsimile)
james.paul@chamberlainlaw.com

Sydney F. Frazier, Jr.
SJIS #FRA007
Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP
2001 Park Place North, Suite 700
Birmingham, Alabama 35203
(205) 716-5291
(205) 716-5389 (Facsimile)
sff@cabaniss.com
*Co-Counsel for Plaintiff Horton, Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that on this date the undersigned has filed using the CM/ECF system a true and correct copy of "Plaintiff Horton Homes, Inc.'s Brief in Support of Motion (i) in Limine to Exclude Evidence Related to Alter Ego After July 10, 2001, or (ii) in the Alternative, for a Ruling Pursuant to Fed. R. Evid. 104(a) on the Time Period of Evidence That Can Be Admitted with Respect to Defendants' Alter Ego Defense" on the following parties and has served the following via the CM/ECF system:

Michael S. Harper
213 Barnett Boulevard
P.O. Box 780608
Tallassee, Alabama 36078

Frank H. Hawthorne, Jr.
Randy A. Myers
Hawthorne & Myers LLC
322 Alabama Street
Montgomery, Alabama 36104

Dated this 14th day of August, 2008.

By: *\/s/ Jimmy L. Paul*
JIMMY L. PAUL
*Georgia Bar No. 567600*
THOMAS C. GRANT
*Georgia Bar No. 297455*
(Admitted Pro Hac Vice)

*Counsel for Plaintiff Horton, Inc.*

Chamberlain, Hrdlicka, White, Williams & Martin
191 Peachtree Street, N.E., 34th Floor
Atlanta, Georgia 30303
(404) 659-1410
(404) 659-1852 (Facsimile)
james.paul@chamberlainlaw.com
286762.1